SALINAS *v.* UNITED STATES

No. 96–738.   Argued October 8, 1997—Decided December 2, 1997

KENNEDY, J., delivered the opinion for a unanimous Court.

*Francisco J. Enriquez* argued the cause for petitioner. With him on the brief was *Rolando Cantu*. *Gerald H. Goldstein* and *Cynthia Hujar Orr* filed a brief for Brigido Marmolejo, Jr., as respondent under this Court's Rule 12.6, in support of petitioner.

*Paul R. Q. Wolfson* argued the cause for the United States. With him on the brief were *Acting Solicitor General Dellinger, Acting Assistant Attorney General Keeney,*

*Deputy Solicitor General Dreeben, Joel M. Gershowitz,* and *Richard A. Friedman.**

JUSTICE KENNEDY delivered the opinion of the Court.

The case before us presents two questions: First, is the federal bribery statute codified at 18 U. S. C. § 666 limited to cases in which the bribe has a demonstrated effect upon federal funds? Second, does the conspiracy prohibition contained in the Racketeer Influenced and Corrupt Organizations Act (RICO) apply only when the conspirator agrees to commit two of the predicate acts RICO forbids? Ruling against the petitioner on both issues, we affirm the judgment of the Court of Appeals for the Fifth Circuit.

I

This federal prosecution arose from a bribery scheme operated by Brigido Marmolejo, the Sheriff of Hidalgo County, Texas, and petitioner Mario Salinas, one of his principal deputies. In 1984, the United States Marshals Service and Hidalgo County entered into agreements under which the county would take custody of federal prisoners. In exchange, the Federal Government agreed to make a grant to the county for improving its jail and also agreed to pay the county a specific amount per day for each federal prisoner housed. Based on the estimated number of federal prisoners to be maintained, payments to the county were projected to be $915,785 per year. The record before us does not disclose the precise amounts paid. It is uncontested, however, that in each of the two periods relevant in this case the program resulted in federal payments to the county well in excess of the $10,000 amount necessary for coverage under 18 U. S. C. § 666. (We denied certiorari on the question whether the moneys paid to the county were "benefits" under a "Fed-

*Joshua L. Dratel, Richard A. Greenberg,* and *Lisa Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

eral program" under § 666(b), and we assume for purposes of this opinion that the payments fit those definitions.)

Homero Beltran-Aguirre was one of the federal prisoners housed in the jail under the arrangement negotiated between the Marshals Service and the county. He was incarcerated there for two intervals, first for 10 months and then for 5 months. During both custody periods, Beltran paid Marmolejo a series of bribes in exchange for so-called "contact visits" in which he remained alone with his wife or, on other occasions, his girlfriend. Beltran paid Marmolejo a fixed rate of $6,000 per month and $1,000 for each contact visit, which occurred twice a week. Petitioner Salinas was the chief deputy responsible for managing the jail and supervising custody of the prisoners. When Marmolejo was not available, Salinas arranged for the contact visits and on occasion stood watch outside the room where the visits took place. In return for his assistance with the scheme, Salinas received from Beltran a pair of designer watches and a pickup truck.

Salinas and Marmolejo were indicted and tried together, but only Salinas' convictions are before us. Salinas was charged with one count of violating RICO, 18 U. S. C. § 1962(c), one count of conspiracy to violate RICO, § 1962(d), and two counts of bribery in violation of § 666(a)(1)(B). The jury acquitted Salinas on the substantive RICO count, but convicted him on the RICO conspiracy count and the bribery counts. A divided panel of the Court of Appeals for the Fifth Circuit affirmed, *United States* v. *Marmolejo,* 89 F. 3d 1185 (1996), and we granted certiorari, 519 U. S. 1148 (1997). To resolve the case, we consider first the bribery scheme, then the conspiracy.

## II

Salinas contends the Government must prove the bribe in some way affected federal funds, for instance by diverting or misappropriating them, before the bribe violates

§ 666(a)(1)(B). The relevant statutory provisions are as follows:

> "(a) Whoever, if the circumstance described in subsection (b) of this section exists—
>
> "(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>
> .        .        .        .        .
>
> "(B) corruptly ... accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or
>
> .        .        .        .        .
>
> "shall be fined under this title, imprisoned not more than 10 years, or both.
>
> "(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
>
> .        .        .        .        .
>
> "(d) As used in this section—
>
> .        .        .        .        .
>
> "(5) the term 'in any one-year period' means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense." 18 U. S. C. § 666.

The enactment's expansive, unqualified language, both as to the bribes forbidden and the entities covered, does not support the interpretation that federal funds must be af-

fected to violate § 666(a)(1)(B). Subject to the $5,000 threshold for the business or transaction in question, the statute forbids acceptance of a bribe by a covered official who intends "to be influenced or rewarded in connection with any business, transaction, or series of transactions of [the defined] organization, government or agency." § 666(a)(1)(B). The prohibition is not confined to a business or transaction which affects federal funds. The word "any," which prefaces the business or transaction clause, undercuts the attempt to impose this narrowing construction. See *United States* v. *James*, 478 U. S. 597, 604–605, and n. 5 (1986); *Trainmen* v. *Baltimore & Ohio R. Co.*, 331 U. S. 519, 529 (1947).

Furthermore, the broad definition of the "circumstances" to which the statute applies provides no textual basis for limiting the reach of the bribery prohibition. The statute applies to all cases in which an "organization, government, or agency" receives the statutory amount of benefits under a federal program. § 666(b). The language reaches the scheme alleged, and proved, here.

Neither does the statute limit the type of bribe offered. It prohibits accepting or agreeing to accept "anything of value." § 666(a)(1)(B). The phrase encompasses all transfers of personal property or other valuable consideration in exchange for the influence or reward. It includes, then, the personal property given to Salinas in exchange for the favorable treatment Beltran secured for himself. The statute's plain language fails to provide any basis for limiting § 666(a)(1)(B) to bribes affecting federal funds.

Salinas attempts to circumscribe the statutory text by pointing to its legislative history. "Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. '[O]nly the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from that language." *United States* v. *Albertini*, 472 U. S. 675, 680 (1985) (citations

omitted) (quoting *Garcia* v. *United States*, 469 U. S. 70, 75 (1984)); see also *Ardestani* v. *INS*, 502 U. S. 129, 135 (1991) (courts may deviate from the plain language of a statute only in "'rare and exceptional circumstances'").

The construction Salinas seeks cannot stand when viewed in light of the statutory framework in existence before § 666 was enacted and the expanded coverage prescribed by the new statute. Before § 666 was enacted, the federal criminal code contained a single, general bribery provision codified at 18 U. S. C. § 201. Section 201 by its terms applied only to "public official[s]," which the statute defined as "officer[s] or employee[s] or person[s] acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch." § 201(a). The Courts of Appeals divided over whether state and local employees could be considered "public officials" under § 201(a). Compare *United States* v. *Del Toro*, 513 F. 2d 656, 661–662 (CA2), cert. denied, 423 U. S. 826 (1975), with *United States* v. *Mosley*, 659 F. 2d 812, 814–816 (CA7 1981), and *United States* v. *Hinton*, 683 F. 2d 195, 197–200 (CA7 1982), aff'd *sub nom. Dixson* v. *United States*, 465 U. S. 482 (1984). Without awaiting this Court's resolution of the issue in *Dixson*, Congress enacted § 666 and made it clear that federal law applies to bribes of the kind offered to the state and local officials in *Del Toro*, as well as those at issue in *Mosley* and *Hinton*.

As this chronology and the statutory language demonstrate, § 666(a)(1)(B) was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds. It would be incongruous to restrict § 666 in the manner Salinas suggests. The facts and reasoning of *Del Toro* give particular instruction in this respect. In that case, the Second Circuit held that a city employee was not a "public official" under § 201(a) even though federal funds would eventually cover 100% of

the costs and 80% of the salaries of the program he administered. 513 F. 2d, at 662. Because the program had not yet entered a formal request for federal funding, the Second Circuit reasoned, "[t]here were no existing committed federal funds for the purpose." *Ibid.* The enactment of § 666 forecloses this type of limitation. Acceptance of Salinas' suggestion that a bribe must affect federal funds before it falls within § 666(a)(1)(B) would run contrary to the statutory expansion that redressed the negative effects of the Second Circuit's narrow construction of § 201 in *Del Toro.* We need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was related to the housing of a prisoner in facilities paid for in significant part by federal funds themselves. And that relationship is close enough to satisfy whatever connection the statute might require.

Salinas argues in addition that our decisions in *Gregory* v. *Ashcroft,* 501 U. S. 452 (1991), and *McNally* v. *United States,* 483 U. S. 350 (1987), require a plain statement of congressional intent before § 666(a)(1)(B) can be construed to apply to bribes having no effect on federal funds. In so arguing, however, Salinas makes too much of *Gregory* and *McNally.* In each of those cases, we confronted a statute susceptible of two plausible interpretations, one of which would have altered the existing balance of federal and state powers. We concluded that, absent a clear indication of Congress' intent to change the balance, the proper course was to adopt a construction which maintains the existing balance. *Gregory,* *supra,* at 460–461; see also *McNally, supra,* at 360.

"No rule of construction, however, requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope . . . ." *United States* v. *Raynor,* 302 U. S. 540, 552 (1938). As we held in *Albertini, supra,* at 680:

"Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license

for the judiciary to rewrite language enacted by the legislature. *Heckler* v. *Mathews*, 465 U. S. 728, 741–742 (1984). Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, §1, of the Constitution. *United States* v. *Locke*, 471 U. S. 84, 95–96 (1985)."

These principles apply to the rules of statutory construction we have followed to give proper respect to the federal-state balance. As we observed in applying an analogous maxim in *Seminole Tribe of Fla.* v. *Florida*, 517 U. S. 44 (1996), "[w]e cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." *Id.*, at 57, n. 9 (internal quotation marks omitted). *Gregory* itself held as much when it noted the principle it articulated did not apply when a statute was unambiguous. See 501 U. S., at 467. A statute can be unambiguous without addressing every interpretive theory offered by a party. It need only be "plain to anyone reading the Act" that the statute encompasses the conduct at issue. *Ibid.* Compare *United States* v. *Bass*, 404 U. S. 336, 349–350 (1971) (relying on Congress' failure to make a clear statement of its intention to alter the federal-state balance to construe an ambiguous firearm-possession statute to apply only to firearms affecting commerce), with *United States* v. *Lopez*, 514 U. S. 549, 561–562 (1995) (refusing to apply *Bass* to read a similar limitation into an unambiguous firearm-possession statute).

The plain-statement requirement articulated in *Gregory* and *McNally* does not warrant a departure from the statute's terms. The text of §666(a)(1)(B) is unambiguous on the point under consideration here, and it does not require the Government to prove federal funds were involved in the bribery transaction.

Furthermore, there is no serious doubt about the constitutionality of §666(a)(1)(B) as applied to the facts of this case. Beltran was without question a prisoner held in a jail

managed pursuant to a series of agreements with the Federal Government. The preferential treatment accorded to him was a threat to the integrity and proper operation of the federal program. Whatever might be said about § 666(a)(1)(B)'s application in other cases, the application of § 666(a)(1)(B) to Salinas did not extend federal power beyond its proper bounds. See *Westfall* v. *United States*, 274 U. S. 256, 259 (1927).

In so holding, we do not address § 666(a)(1)(B)'s applicability to intangible benefits such as contact visits, because that question is not fairly included within the questions on which we granted certiorari. See *Yee* v. *Escondido*, 503 U. S. 519, 533 (1992). Nor do we review the Court of Appeals' determination that the transactions at issue "involv[ed] any thing of value of $5,000 or more," since Salinas does not offer any cognizable challenge to that aspect of the Court of Appeals' decision. We simply decide that, as a matter of statutory construction, § 666(a)(1)(B) does not require the Government to prove the bribe in question had any particular influence on federal funds and that under this construction the statute is constitutional as applied in this case.

## III

Salinas directs his second challenge to his conviction for conspiracy to violate RICO. There could be no conspiracy offense, he says, unless he himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under § 1962(c). Salinas identifies a conflict among the Courts of Appeals on the point. Decisions of the First, Second, and Tenth Circuits require that, under the RICO conspiracy provision, the defendant must himself commit or agree to commit two or more predicate acts. See *United States* v. *Sanders*, 929 F. 2d 1466, 1473 (CA10), cert. denied, 502 U. S. 846 (1991); *United States* v. *Ruggiero*, 726 F. 2d 913, 921 (CA2), cert. denied *sub nom. Rabito* v. *United States*, 469 U. S. 831 (1984); *United States* v. *Winter*, 663 F. 2d

1120, 1136 (CA1), cert. denied, 460 U. S. 1011 (1983). Eight other Courts of Appeals, including the Fifth Circuit in this case, take a contrary view. See *United States* v. *Pryba*, 900 F. 2d 748, 760 (CA4), cert. denied, 498 U. S. 924 (1990); *United States* v. *Kragness*, 830 F. 2d 842, 860 (CA8 1987); *United States* v. *Neapolitan*, 791 F. 2d 489, 494–500 (CA7), cert. denied, 479 U. S. 940 (1986); *United States* v. *Joseph*, 781 F. 2d 549, 554 (CA6 1986); *United States* v. *Adams*, 759 F. 2d 1099, 1115–1116 (CA3), cert. denied, 474 U. S. 971 (1985); *United States* v. *Tille*, 729 F. 2d 615, 619 (CA9), cert. denied, 469 U. S. 845 (1984); *United States* v. *Carter*, 721 F. 2d 1514, 1529–1531 (CA11), cert. denied *sub nom. Morris* v. *United States*, 469 U. S. 819 (1984).

Before turning to RICO's conspiracy provision, we note the substantive RICO offense, which was the goal of the conspiracy alleged in the indictment. It provides:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U. S. C. § 1962(c).

The elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity. See *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 496 (1985). "Pattern of racketeering activity" is a defined term and requires at least two acts of "racketeering activity," the so-called predicate acts central to our discussion. 18 U. S. C. § 1961(5). "Racketeering activity," in turn, is defined to include "any act . . . involving . . . bribery . . . which is chargeable under State law and punishable by imprisonment for more than one year." § 1961(1)(A). The Government's theory was that Salinas himself committed a substantive § 1962(c) RICO violation by conducting the en-

terprise's affairs through a pattern of racketeering activity that included acceptance of two or more bribes, felonies punishable in Texas by more than one year in prison. See Tex. Penal Code Ann. § 36.02(a)(1) (1994). The jury acquitted on the substantive count. Salinas was convicted of conspiracy, however, and he challenges the conviction because the jury was not instructed that he must have committed or agreed to commit two predicate acts himself. His interpretation of the conspiracy statute is wrong.

The RICO conspiracy statute, simple in formulation, provides:

> "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U. S. C. § 1962(d).

There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.

In interpreting the provisions of § 1962(d), we adhere to a general rule: When Congress uses well-settled terminology of criminal law, its words are presumed to have their ordinary meaning and definition. See *Morissette* v. *United States*, 342 U. S. 246, 263 (1952). The relevant statutory phrase in § 1962(d) is "to conspire." We presume Congress intended to use the term in its conventional sense, and certain well-established principles follow.

A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. See *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150, 253–254 (1940). The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the

acts of each other. See *Pinkerton* v. *United States*, 328 U. S. 640, 646 (1946) ("And so long as the partnership in crime continues, the partners act for each other in carrying it forward"). If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. As Justice Holmes observed: "[P]lainly a person may conspire for the commission of a crime by a third person." *United States* v. *Holte*, 236 U. S. 140, 144 (1915). A person, moreover, may be liable for conspiracy even though he was incapable of committing the substantive offense. *United States* v. *Rabinowich*, 238 U. S. 78, 86 (1915).

The point Salinas tries to make is in opposition to these principles, and is refuted by *Bannon* v. *United States*, 156 U. S. 464 (1895). There the defendants were charged with conspiring to violate the general conspiracy statute, *id.*, at 464, which requires proof of an overt act. See *supra*, at 63. One defendant objected to the indictment because it did not allege he had committed an overt act. See *Bannon*, *supra*, at 468. We rejected the argument because it would erode the common-law principle that, so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators. We observed in *Bannon:* "To require an overt act to be proven against every member of the conspiracy, or a distinct act connecting him with the combination to be alleged, would not only be an innovation upon established principles, but would render most prosecutions for the offence nugatory." 156 U. S., at 469. The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts.

Our recitation of conspiracy law comports with contemporary understanding. When Congress passed RICO in 1970, see Pub. L. 91–452, § 901(a), 84 Stat. 941, the American Law

Institute's Model Penal Code permitted a person to be convicted of conspiracy so long as he "agrees with such other person or persons that they or one or more of them will engage in conduct that constitutes such crime." Model Penal Code § 5.03(1)(a) (1962). As the drafters emphasized, "so long as the purpose of the agreement is to facilitate commission of a crime, the actor need not agree 'to commit' the crime." American Law Institute, Model Penal Code, Tent. Draft No. 10, p. 117 (1960). The Model Penal Code still uses this formulation. See Model Penal Code § 5.03(1)(a), 10 U. L. A. 501 (1974).

A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself. See *Callanan* v. *United States*, 364 U. S. 587, 594 (1961).

It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense. True, though an "enterprise" under § 1962(c) can exist with only one actor to conduct it, in most instances it will be conducted by more than one person or entity; and this in turn may make it somewhat difficult to determine just where the enterprise ends and the conspiracy begins, or, on the other hand, whether the two crimes are coincident in their factual circumstances. In some cases the connection the defendant had to the al-

leged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part of the Government's case. Perhaps these were the considerations leading some of the Circuits to require in conspiracy cases that each conspirator himself commit or agree to commit two or more predicate acts. Nevertheless, that proposition cannot be sustained as a definition of the conspiracy offense, for it is contrary to the principles we have discussed.

In the case before us, even if Salinas did not accept or agree to accept two bribes, there was ample evidence that he conspired to violate subsection (c). The evidence showed that Marmolejo committed at least two acts of racketeering activity when he accepted numerous bribes and that Salinas knew about and agreed to facilitate the scheme. This is sufficient to support a conviction under § 1962(d).

As a final matter, Salinas says his statutory interpretation is required by the rule of lenity. The rule does not apply when a statute is unambiguous or when invoked to engraft an illogical requirement to its text. See *United States* v. *Shabani,* 513 U. S. 10, 17 (1994).

The judgment of the Court of Appeals is

*Affirmed.*