**UNITED STATES of America**

v.

**David KAY and Douglas Murphy.**

**No. Crim.A. H–01–914.**

United States District Court,
S.D. Texas,
Houston Division.

April 18, 2002.

Philip Urofsky, U.S. Dept. of Justice, Criminal Div., Fraud Section, Washington, DC, for U.S.

Robert C. Bennett, Jr., Bennett & Secrest, Houston, TX, Reid H. Weingarten, Attorney at Law, Washington, DC, Brian M. Heberlig, Steptoe & Johnson, Washington, DC, for David Kay.

Robert Sussman, Hinton, Sussman, Bailey & Davidson, Houston, TX, for Douglas Murphy.

## ORDER

HITTNER, District Judge.

Pending before the Court is Defendant David Kay's Motion to Dismiss Counts 1–12 for Failure to State an Offense Under

15 U.S.C. §§ 78dd–1(a), 78dd–2(a).[1] Having considered the motion, submissions, and applicable law, as well as the parties' arguments at a hearing conducted on April 4, 2002, the Court determines that the motion should be granted.

## I. INTRODUCTION

Defendants Douglas Murphy and David Kay are charged by a twelve-count indictment with violations of the Foreign Corrupt Practices Act of 1977 ("FCPA"), 15 U.S.C. §§ 78dd–1 *et seq.* The indictment alleges that Defendants, as president and vice president of American Rice, Inc. ("ARI"), made improper payments to officials in the Republic of Haiti to reduce customs duties and sales taxes owed by ARI to the Haitian government. Defendants now move to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(2).

## II. LAW & ANALYSIS

The Court is asked to consider whether the allegations contained in the indictment are sufficient to state a claim under §§ 78dd–1(a) and 78dd–2(a) of the FCPA, which the parties agree is a matter of first impression in the federal courts. Defendants present the following arguments in support of dismissal:

- The plain language of the FCPA does not prohibit payments to reduce customs duties or tax obligations.
- The legislative history confirms that Congress intended to limit the types of acts made criminal by the FCPA.
- Under the rule of lenity, the Court must resolve all ambiguities in the statute in favor of the Defendants.

- The FCPA does not provide fair warning that the alleged conduct is prohibited.

## A. Plain Language

The FCPA prohibits payments to a foreign official to "obtain or retain business."[2] *See* 15 U.S.C. §§ 78dd–1(a), 78dd–2(a) (2000). The question before the Court, therefore, is whether payments to foreign government officials made for the purpose of reducing customs duties and taxes fall under the scope of "obtaining or retaining business" pursuant to the text of the FCPA.

Defendants contend that the FCPA, on its face, does not prohibit such payments. Rather, the FCPA only prohibits payments made to "obtain or retain business," which, according to Defendants, limits the scope of the FCPA to payments to secure new business or to renew existing business. Here, Defendants argue that they did not make the alleged payments to Haitian officials to obtain new business or to renew existing business, as ARI had already established its business in Haiti and made the payments in issue to reduce customs duties and taxes on incoming goods.

The Government responds that the FCPA applies, without any textual limit, to all bribes made for the purpose of obtaining or retaining business. The Government further argues that Defendants' payments to reduce customs duties and sales taxes were essential to ARI to be able to conduct business in Haiti and, thus, the payments constituted prohibited payments made to retain business.[3]

---

1. The indictment against Kay was filed on December 12, 2001. The indictment was superseded on March 25, 2002, adding Murphy as a defendant. The Court heard oral argument on Kay's motion to dismiss on April 4, 2002. The Court subsequently granted Murphy's unopposed motion to adopt Kay's motion to dismiss. Accordingly, the instant order applies to both Defendants.

2. When the Court refers to "the FCPA" herein, it refers only to the provisions of §§ 78dd–1(a) and 78dd–2(a) of the FCPA that contain the phrase "obtaining or retaining business."

3. The Government also states that Defendants argue that the phrase "obtain or retain business" is limited to obtaining or retaining *government contracts* or *commercial agreements.*

The Government also argues that other provisions in the FCPA demonstrate that the statute is not as limited as Defendants suggest. Specifically, the Government points to the fact that the FCPA provides for an exception to liability for "routine governmental actions," which includes actions that are ordinarily and commonly performed by a foreign official in:

(i) obtaining permits, licenses, or other official documents to qualify a person to do business in a foreign country;

(ii) processing governmental papers, such as visas and work orders;

(iii) providing police protection, mail pick-up and delivery, or scheduling inspections associated with contract performance or inspections related to transit of goods across country;

(iv) providing phone service, power and water supply, loading and unloading cargo, or protecting perishable products or commodities from deterioration; or

(v) actions of a similar nature.

15 U.S.C. §§ 78dd–1(f)(3)(A), 78dd–2(h)(4)(A) (2000). The Government argues that none of Defendants' alleged payments fall under any of these exceptions; moreover, Congress used "specific, targeted exclusionary language to exclude particular types of payments" from the FCPA, thus intentionally confirming the statute's otherwise broad scope.

The parties thus take the respective positions that: (1) "the FCPA clearly and unambiguously limits the scope of the FCPA to payments to secure new business or renew existing business" (as advocated by Defendants), or (2) "the FCPA's unam-biguous language plainly encompasses Defendants' bribery" (as advocated by the Government).

In applying criminal laws, federal courts must generally follow the plain and unambiguous language of the statute. *E.g., Salinas v. United States,* 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *Johnson v. Sawyer,* 120 F.3d 1307, 1319 (5th Cir.1997). Reviewing the "obtain or retain business" language, together with the exceptions listed above, the Court determines that the FCPA is ambiguous under these circumstances.[4] Therefore, the Court turns to an analysis of the legislative history of the FCPA. *See, e.g., Ratzlaf v. United States,* 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.").

### B. Legislative History

#### 1. 1977 Original Act

Congress enacted the FCPA in 1977 to, inter alia, stop bribery of foreign officials by domestic corporations. *United States v. Castle,* 925 F.2d 831, 834 (5th Cir.1991). The legislation was prompted, at least in part, by disclosures of corporate funds being used for illegal purposes and the high-profile "United Brands" scandal involving payments to Honduran government officials to reduce taxes on banana exports. *See* Harvey L. Pitt & Karl A. Groskaufmanis, *Minimizing Corporate Civil & Criminal Liability: A Second Look at Corporate Codes of Conduct,* 78 GEO.L.J. 1559, 1583–87 (1990).

---

The Court does not discern this limitation from Defendants' pleadings or arguments to the Court. Rather, Defendants argue that the alleged conduct did not constitute payments made to "obtain or retain business."

**4.** For example, although not suggested by Defendants, one could argue that Defendants' conduct arguably falls under the "actions of a similar nature" exception for routine governmental actions. The Court by no means suggests that this is a defense in this case, but only points out that the language of the exceptions is not as clear as advocated by the Government.

In the course of enacting the FCPA, Congress considered and rejected two bills that would have broadened the scope of the FCPA's prohibited activities. The House bill prohibited corrupt payments to foreign officials used to influence "*any act or decision of such foreign official in his official capacity.*" H.R. 3815, 95th Cong. § 2 (1977) (emphasis added). The Senate bill prohibited any payments made for the purpose of "obtaining or retaining business ... or directing business to, any person *or influencing legislation or regulations* of [the foreign government]...." S. 305, 95th Cong. § 103 (1977) (emphasis added).

Congress rejected these proposals in favor of the phrase "obtain or retain business" as found in the current version of the FCPA. *See* 15 U.S.C. §§ 78dd–1(a), 78dd–2(a) (2000). As stated in the 1977 Conference Committee Report, "the purpose of the payment must be to influence any act or decision of a foreign official (including a decision not to act) or to induce such official to use his influence to affect a government act or decision so as to assist an issuer in obtaining, retaining or directing business to any person." H.R.Conf.Rep. No. 95–831, at 12 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4121, 4124–25.

A court cannot "supply to construction what Congress has clearly shown its intention to omit." *Carey v. Donohue*, 240 U.S. 430, 437, 36 S.Ct. 386, 60 L.Ed. 726 (1916); *see also INS v. Cardoza–Fonseca*, 480 U.S. 421, 442–43, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.") (internal citations omitted). A review of the above legislative history confirms that in 1977, Congress chose to limit the scope of the prohibited activities under the FCPA and did not

intend to cover payments made to influence any and all governmental decisions. This legislative history weighs against the Government's argument that the FCPA should be construed so broadly so as to encompass payments made to reduce customs duties or tax obligations.

### 2. 1988 Amendments

In 1988, in response to business concerns that the FCPA placed American businesses at a competitive disadvantage in the foreign marketplace, Congress amended the FCPA. *See* Pitt & Groskaufmanis, *supra* at 1586–87. These amendments included exceptions for the "routine governmental action" discussed above. The House also sought to amend the FCPA to prohibit payments to "obtain or retain business" that included payments for "procurement of legislative, judicial, regulatory, *or other action in seeking more favorable treatment by a foreign government.*" H.R.Conf.Rep. No. 100–576, at 918 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1951 (emphasis added). Congress rejected this proposed amendment in favor of the original statutory language, again limiting the FCPA's prohibition to payments made to "obtain or retain business."

Despite the fact that Congress rejected expansion of the statutory language, a 1988 House Conference Report contained the following commentary purporting to clarify the meaning of the existing "retaining business" statutory language:

> the reference to corrupt payments for "retaining business" in present law is not limited to the renewal of contracts or other business, but also includes a prohibition against corrupt payments related to the execution or performance of contracts or the carrying out of existing business, *such as a payment to a foreign official for the purpose of obtaining*

*more favorable tax treatment. See, e.g., the United Brands case.*

*Id.* at 918, *reprinted in* 1988 U.S.S.C.A.N. at 1951 (emphasis added).

The Court declines to give the 1988 House Conference Report deference in its interpretation of the FCPA, as it consists of an after-the-fact interpretation of the term "retaining business" by a subsequent Congress more than ten years after the enactment of the original language. *See Cent. Bank v. First Interstate Bank,* 511 U.S. 164, 185–86, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("[T]he interpretation given by one Congress (or committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute.") (quoting *Pub. Employees Ret. Sys. of Ohio v. Betts,* 492 U.S. 158, 168, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989)). More importantly, as discussed below, this "statement" of Congress does not relate to any change to the "obtain or retain business" language, as the 1988 Congress rejected alteration of that text.

■ The Government contends that this report should be accorded significant weight and persuasive value because it constitutes an authoritative expression of expert opinion as to the FCPA's history. As support for this proposition, the Government cites *Bell v. New Jersey,* 461 U.S. 773, 785–86, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983), for the proposition that "Congress [is] at its most authoritative, adding ... amendments to an already complex and sophisticated act. Congress is not merely expressing an opinion ... but is acting on what it understands its own prior acts to mean." The Court has examined this statement, including its source, *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger,* 517 F.2d 329, 343 (5th Cir. 1975), *modified by* 522 F.2d 179 (5th Cir. 1975). A review of these authorities reveals that subsequent *enactments* of Congress are entitled "great weight in statuto-

ry construction." *See Bell,* 461 U.S. at 785–86, 103 S.Ct. 2187 ("[N]ot only have members of Congress stated their views, but *Congress has acted on those views.* In 1974, *it enacted a provision* limiting [ ] liability....") (emphasis added); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) ("Subsequent *legislation* declaring the intent of an earlier statute is entitled to great weight in statutory construction.") (emphasis added); *Mount Sinai,* 517 F.2d at 343 ("here we have Congress at its most authoritative, *adding complex and sophisticated amendments* to an already complex and sophisticated act") (emphasis added); *see also Bobsee Corp. v. United States,* 411 F.2d 231, 237 n. 18 (5th Cir.1969) ("Although a committee report written with regard to a *subsequent enactment* is not legislative history with regard to a previously enacted statute, it is entitled to some consideration as a secondarily authoritative expression of expert opinion.") (emphasis added). In each of these cases, the courts relied upon subsequent enactments as support for their interpretation of a statute's legislative history.

Here, in contrast, the Court is not asked to consider enactments of a subsequent Congress that would serve as guidance for the FCPA's original "obtain or retain business" language. Rather, in 1988, Congress *rejected* the House's proposal to expand the "obtain or retain business" language currently contained in the FCPA, and the 1988 House Conference Report attempts to "clarify" language that was never amended. Although the report might have provided authoritative explanation regarding the amendments that were proposed and adopted by Congress, the Court is not faced with that situation here. Instead, the 1988 House Conference Report consists of a belated interpretation of preexisting statutory language by the House, whose attempt to amend perti-

nent provisions of the statute had failed. The Court thus declines to give weight to the 1988 House Conference Report in its determination of the legislative history of the FCPA's "obtain or retain business" text. *Cf. Mount Sinai*, 517 F.2d at 343 (describing pieces of "legislative history" that are of dubious value in statutory construction).[5]

There are additional reasons behind the Court's hesitance to attach value to the 1988 House Committee Report. As Defendants point out, "the suggestion that the existing FCPA was entitled to such an expansive interpretation begs the question of why the House of Representatives sought to amend the Act in the first place. Indeed, if the statute already covered the types of payments described in the self-serving conference report, there would have been no need to attempt to amend the statute to cover any payment 'seeking more favorable treatment by a foreign government.'" Further, the Court notes that Congress was aware of the United Brands case in 1977, yet it did not specifically include language in the original FCPA prohibiting payments to reduce tax obligations. Accordingly, this Court declines to give weight to the 1988 House Conference Report that purported to clarify the 1977 statutory language of the FCPA. Rather, the Court finds that the 1988 Congress considered and rejected expansion of the "obtain or retain business" phrase as found in the original FCPA.

### 3. 1998 Amendments

In 1998, in response to the Organization for Economic Cooperation and Development Convention on Combating Bribery of Foreign Officials in International Business Transactions ("the OECD Convention"), Congress again amended the FCPA. The OECD Convention had asked Congress to criminalize payments made to foreign officials "in order to obtain or retain business *or other improper advantage* in the conduct of international business." OECD Convention, art. 1(1), *reprinted in* 37 I.L.M. 1, 4 (1998) (emphasis added). Congress again declined to amend the "obtain or retain business" language in the FCPA.[6]

The Court thus determines that Congress has considered and rejected statutory language that would broaden the scope of the FCPA to cover the conduct in question here. Accordingly, the Court determines that the allegations in the indictment in this case do not fall under the scope of the FCPA. Counts one through twelve of the indictment against Defendants should therefore be dismissed.

### C. Remaining Arguments

As the Court determines that the the statute is not ambiguous when read in light of its legislative history, it will not consider Defendants' argument that the rule of lenity requires all doubts to be resolved in his favor. *See, e.g., United States v. Wells*, 519 U.S. 482, 499, 117 S.Ct.

---

**5.** Examples of these situations include: · (1) a committee of Congress attempting to advise the courts of what it thought a prior Congress meant, (2) Congress attempting to enact a clarifying amendment only to be rebuffed by the President who signed the original and thinks it has a different meaning, (3) Congress failing to enact a clarifying amendment, from which ambiguous failure to act we are asked to draw some meaning, and (4) legislative history vaguely referring to the prior state of the law. *Mount Sinai*, 517 F.2d at 343 (internal citations omitted). The instant case is

most analogous to a committee of Congress attempting to advise a court of what it thought a prior Congress meant. *Cf. id.*

**6.** Congress did not insert the "improper advantage" language into the "obtain or retain business" provision of the FCPA at issue herein. Congress did, however, add the "improper advantage" language into the clause of the statute setting out the alternative types of quid pro quos covered by the FCPA. *See* 15 U.S.C. §§ 78dd–1(a)(1)(A)(iii), 78dd–2(a)(1)(A)(iii) (2000).

921, 137 L.Ed.2d 107 (1997) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, ... [the court] can make no more than a guess as to what Congress intended.") (internal quotations omitted). Moreover, because the Court determines that the allegations in the indictment do not state a claim against Defendants under the FCPA, it need not address Defendants' alternative ground that the FCPA fails to provide fair warning that the Defendants' actions were criminal.

Given the foregoing, the Court determines that Defendants' conduct, as alleged in the indictment, does not state a claim under §§ 78dd–1(a) and 78dd–2(a) of the FCPA. Accordingly, the Court hereby

ORDERS that Defendant David Kay's Motion to Dismiss Counts 1–12 for Failure to State an Offense Under 15 U.S.C. §§ 78dd–1(a), 78dd–2(a) is GRANTED. Counts one through twelve of the superseding indictment pending against Defendants David Kay and Douglas Murphy are hereby DISMISSED.