**UNITED STATES of America**

v.

**Paul JACOBS.**

**Criminal No. 3:07CR90(JBA).**

United States District Court, D. Connecticut.

May 2, 2008.

Andrew B. Bowman, Law Offices of Andrew Bowman, Westport, CT, William F. Dow, III, Jacobs, Grudberg, Belt, Dow & Katz, P.C., New Haven, CT, for Defendant.

David A. Ring, Nora R. Dannehy, U.S. Attorney's Office, Hartford, CT, Kevin J. O'Connor, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

## RULING ON DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

JANET BOND ARTERTON, District Judge.

On October 31, 2007, Defendant Paul Jacobs pleaded guilty to one count of conspiracy to commit bribery in violation of 18 U.S.C. § 371 and to an information charging him with criminal forfeiture. Jacobs, who has since retained new counsel, now seeks to withdraw this guilty plea for a variety of reasons, including (1) his actual legal innocence of the crime charged, (2) the lack of sufficient intent to join the conspiracy, (3) the Government's failure to disclose exculpatory evidence, and (4) the ineffectiveness of his original attorney.[1] The Court heard oral argument on Jacobs's motion on April 9, 2008, during which his bases for withdrawal continued to evolve. As explained below, because the Court concludes that there is no factual or legal justification for permitting Jacobs to withdraw his guilty plea, his motion is denied.

### I. Background

#### A. The Indictment

The indictment in this case contained eight counts. The first count charged that Paul Jacobs—along with his father, Robert

---

1. As explained below, Jacobs subsequently abandoned the latter two grounds for withdrawal at oral argument.

Jacobs, and brother, Philip Jacobs—corruptly agreed to pay cash to law enforcement officers in return for preferential treatment in locating and arresting fugitives who had failed to appear, putting at risk the bonds posted by the Jacobses. Specifically, this agreement was allegedly between the Jacobses and William White, a lieutenant in the New Haven Police Department, who subsequently pleaded guilty to the conspiracy count of this indictment and to two counts in an unrelated indictment and was sentenced to 38 months' imprisonment. The indictment further charged, in counts two through seven, that the three Jacobses and White committed substantive federal program bribery, mail fraud, and theft of honest services, in violation of 18 U.S.C. §§ 666, 1341, and 1346.

## B. The Plea Proceeding

After the indictment was returned in April 2007, the Government reached plea agreements with Paul, Robert, and Philip Jacobs, and the Court heard their guilty pleas jointly on October 31, 2007. On the morning of October 31, then-counsel for Paul Jacobs represented that he needed a bit more time to consult with his client, which was accommodated by a brief recess. When Paul Jacobs indicated that he was ready to continue, the proceeding began, and he, together with Robert and Philip, pleaded guilty to the single count of criminal conspiracy.

During the plea proceeding, the Court asked Paul Jacobs to state in his own words what he did that demonstrates his guilt to the offense of conspiracy, which prompted the following exchange:

> [Jacobs]: Yes, your Honor. In the summer of 2006, at the urging of my father, I agreed to pay money to an undercover officer, the UCE, who represented himself to be a police officer, to apprehend a fugitive. The fugitive was apprehended and I paid the officer the money, three-quarters in check and one quarter in cash.
>
> I accept responsibility for my conduct and acknowledge this was a violation of law. And I will say that it was an isolated incident; it was one time that I entered into this and never did afterwards.
>
> The Court: But you understand, as I just observed, that entering into, willfully [entering] into the agreement, even if it already existed and prior conduct had already taken place, agreement to unlawfully give money, bribe money to a public—to an official for the conduct of business, public business, can still constitute conspiracy to commit federal bribery even if it is only one time.
>
> [Jacobs]: I understand.
>
> The Court: Okay.
>
> [Jacobs]: And I also would say that the deal came to me through the officer, he actually solicited me with the sum already in mind, and he changed the price after the apprehension, but I paid him anyway.
>
> The Court: All right, not all members of a conspiracy are, in order to be convicted of that conspiracy, required to have done everything or even to have known all the aspects of the conspiracy. It is sufficient if you understood the basic unlawful proposition of the agreement and that you willingly joined that, albeit even on one occasion.
>
> [Jacobs]: Yes, your honor.

(Plea Tr., Oct. 31, 2007, 71:11–72:20.) The Government next summarized the evidence that it would present at trial which would prove Jacobs's guilt beyond a reasonable doubt:

> The evidence would establish that from approximately 2002 through March 13 of '07, the defendants, Robert Jacobs, Phil-

ip Jacobs, Paul Jacobs, William White, together with others, entered into an unlawful agreement, that is, that during various periods, various times during the period of '02 through '07, Robert Jacobs, Paul Jacobs, and Philip Jacobs, knowingly, willfully and corruptly, agreed or conspired to give things of value, in this cash, to influence and reward Lieutenant White and the undercover and others in connection with the business of the New Haven Police Department, the New Haven court system and the Connecticut Department of Public Safety, and that the business involved things of value of over $5,000.

The evidence would establish that Robert Jacobs, Philip Jacobs and Paul Jacobs agreed that White and the undercover and others would use their official positions to provide the Jacobses and their companies with preferential treatment, including, but not necessarily limited to, finding fugitives and steering clients to a Jacobs-related company in exchange for cash payments....

[T] he government would establish that between July of '06 and March of '07, Robert Jacobs, Philip Jacobs and Paul Jacobs provided White and the undercover with approximately 24,400 in cash in exchange for White and the undercover using their official positions to find three fugitives, and that the apprehension of those three fugitives meant that the Jacobses, Robert, Philip and Paul, would not be required to pay the State of Connecticut.

The evidence would establish, for instance, as Mr. Paul Jacobs said, that a deal came through the undercover. The evidence would establish with respect to one fugitive, that at the suggestion of Robert Jacobs, the undercover called Paul Jacobs asking whether he had a fugitive that he wanted the undercover to find, and based on that request, Paul Jacobs faxed information to the undercover, and the undercover and Paul agreed to a price to find that fugitive. William White and the undercover then used resources of the New Haven Police Department and the Connecticut State Police to locate that fugitive, and the payment was made, originally with a check and cash, and then, based on discussions between Paul Jacobs as well as Robert Jacobs and the undercover and William White, · it was noted that the check was not a good idea and an exchange was made of the check for cash. (Tr., 75:5–76:2, 76:9–77:10.) [2]

When asked by the Court if he agreed with this summary of the evidence, Paul Jacobs replied: "I agree. I would just say that as the check was cashed, it was not known to me until maybe just a month ago where the cash had come from. So I agree, yes." (Tr., 78:6–9.) And after the Court continued to confirm what Jacobs was admitting, there was this exchange:

> The Court: But you gave the undercover agent the money.
>
> [Jacobs]: I did.
>
> The Court: In return for services to apprehend a fugitive on your bond.
>
> [Jacobs]: That is correct.

(Tr., 79:1–6.) Jacobs also provided his own written statement of what occurred as part of his petition to plead guilty to the conspiracy count:

> In the summer of 2006, at the urging of my Dad, I agreed to pay 10,000 to the undercover who represented himself to be a Police Officer to apprehend a fugitive. The fugitive was apprehended and I paid $12,500.00 after they demanded $15,000.00. I accept responsibility for

---

**2.** This summary of the evidence mirrored the stipulation of offense conduct which Paul Jacobs separately signed and agreed to as part of his plea agreement.

my conduct and acknowledge this was a violation of the law.

(Plea Petition at 12.)

## C. The Allegedly Exculpatory Evidence

In his brief and during oral argument on the motion to withdraw, Jacobs raised the additional issue that evidence of allegedly exonerating telephone conversations was brought to his attention after he entered his guilty plea. The transcripts of these conversations reveal that Paul Jacobs spoke with Blake Stine, a sergeant with the Connecticut State Police working undercover to investigate Lieutenant White's corrupt activities, about apprehending a fugitive, "WD," from Waterbury. Jacobs does not contest that the Government produced this evidence before he entered his guilty plea. Nevertheless, he characterizes this evidence as demonstrating his legal innocence to the conspiracy charge, which he did not realize prior to his plea on October 31, 2007.

## II. Standard for Withdrawal of a Guilty Plea

Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea after it has been accepted by the court but before sentencing if he or she "show[s] a fair and just reason."[3] This confers no "absolute right to withdraw" a guilty plea, however. *United States v. Williams*, 23 F.3d 629, 634 (2d Cir.1994). "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992). The Second Circuit has ex-

plained the criteria for permitting withdrawal of a guilty plea as follows:

In general, to determine whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court considers, inter alia: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea. Courts may also look to whether the defendant has "raised a significant question about the voluntariness of the original plea." The standard for withdrawing a guilty plea is stringent because "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice."

*United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir.2004) (citations omitted). Within these considerations, it is the defendant who "bears the burden of showing that there are valid grounds for relief." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997).

## III. Discussion

### A. Paul Jacobs's Claimed Actual Innocence

As became clear during oral argument, Jacobs's principal claim for permitting withdrawal of his guilty plea is that he now believes the evidence does not demonstrate

---

**3.** This provision was previously located in Federal Rule of Criminal Procedure 32, and "so cases interpreting the former versions of Rule 32 are authority for the proper interpre-

tation of the current Rule 11(d)(2)(B)." *United States v. Rosen*, 409 F.3d 535, 545 (2d Cir.2005).

his guilt to the crime of conspiracy. This argument is based on what is essentially a revised theory of what the record in this case shows. According to Jacobs, the evidence of the conversations he had with Stine shows that Stine was agreeing to no more than a "personal frolic," namely a "personal task during 'downtime' and, therefore, not acting with any business of the New Haven police department." (Def.'s Mem. Withdraw at 7.) Furthermore, he contends, "[t]his agreement was essentially no different than if Jacobs had hired Stine to provide parking lot security in Waterbury, or, for that matter, to help him shovel his driveway while off-duty." (*Id.*) Under this view, because it was not illegal to hire an off-duty police officer in this manner, there is insufficient evidence that Jacobs affirmatively joined the unlawful conspiracy charged. His argument aligns with his more general position that he lacked the requisite intent to join the conspiracy with his relatives and White, and is therefore innocent of the offense to which he pleaded guilty.

█ A few observations about the crime of conspiracy are relevant here. As Justice Douglas recognized, "[i]t has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established." *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). "It is elementary," the Supreme Court more recently observed, "that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." *Salinas v. United States,* 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Fundamentally, the crime of conspiracy is about the agreement reached between participants, who "need not have

agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan." *United States v. Maldonado–Rivera,* 922 F.2d 934, 963 (2d Cir.1990). It is not necessary that each party to such an agreement "knew every other member or was aware of all acts committed in furtherance of it. It is sufficient to show that he participated in what he knew to be a collective venture meeting the allegations of the indictment." *United States v. Alessi,* 638 F.2d 466, 473 (2d Cir.1980). To convict on a conspiracy charge under 18 U.S.C. § 371, a jury must find that at least one of the alleged overt acts was committed by at least one of the parties to the agreement. *United States v. Sacco,* 436 F.2d 780, 783 (2d Cir.1971).

The conspiracy as charged in this case was the agreement between Paul Jacobs, Robert Jacobs, and Philip Jacobs to influence White and others by paying for preferential treatment in apprehending fugitives. Although the indictment also charged that these defendants committed the substantive criminal acts which were the goal of this agreement, Paul Jacobs pleaded guilty only to the charge of conspiracy. In his papers and during oral argument, Jacobs framed much of his argument for withdrawal in terms of being legally innocent of the substantive crime of federal program bribery, which misses the mark for the simple reason that the two crimes are distinct. Moreover, Jacobs's factual descriptions of what happened during and in connection with the plea—the verity and voluntariness of which he has not disputed—conform with the notion that he was admitting to a course of conduct which demonstrates his guilt to the charge of conspiracy. In so pleading guilty, he explained that he agreed with his father, Robert Jacobs, to pay Stine (who he did not know was undercover) cash in exchange for apprehending a fugitive. During the plea colloquy, Jacobs made clear

that this was "an isolated incident," but agreed that he understood that a single incident can nevertheless lead to criminal liability in this context. Further, after the Government summarized the evidence that it would present at trial, Jacobs agreed with the Government's description of what he did that showed his guilt, even under additional questioning by the Court.

■ Therefore, whether Stine was on- or off-duty when he and Paul Jacobs arranged to apprehend WD in exchange for cash, there is no basis on which to conclude that the factual prerequisite for the conspiracy charge is insufficient or flawed. Jacobs admitted in his own words that he entered the agreement, at the urging of Robert Jacobs; so long as at least one overt act was committed in furtherance of this agreement, the offense was complete, regardless of the nature of the Paul Jacobs–Stine exchange. Despite this, Jacobs claims that he lacked the requisite mental state because he was unaware of the evidence of the recorded conversations concerning the apprehension of WD and because he did not know what the other participants to the agreement were doing. The former is unpersuasive on the facts, for Jacobs cannot reasonably claim ignorance of conversations *to which he was a party*; and the latter is legally insufficient because of the principle that one member of a conspiracy need not know exactly what all the others are doing, so long as he or she willingly joined the agreed-to end.

Jacobs's position that he is innocent of conspiracy amounts to no more than advocating an alternative theory of the evidence which he could have presented at trial and argued to the jury—that there is insufficient evidence showing his membership in the unlawful agreement at issue. However, Jacobs chose to admit the necessary elements of the crime of conspiracy, and, rather than dispute the veracity or voluntariness of these admissions, he now urges that certain recent developments— really, recent reinterpretations of already-existing evidence—show his innocence. This argument falls short. In *United States v. Rosen*, the defendant challenged the sufficiency of his plea allocution on appeal, believing that his factual admissions did not demonstrate his guilt to the crime of conspiracy to commit securities or wire fraud. 409 F.3d at 549. The Second Circuit, calling this contention "border[line] frivolous," explained that "[a] guilty plea is an unconditional admission of guilt [which] constitutes an admission of all the elements of a formal criminal charge, [and][a]s to those elements the plea is as conclusive as a jury verdict." *Id.* (quotation marks and citations omitted). Thus, the court concluded:

> despite the post-plea self-serving statements that Rosen did not know of the overall design or scheme, that he had taken the position from the outset that he did not knowingly and deliberately participate in the manipulation of the stock of H & R, and that he had no intent to defraud, the record of Rosen's allocution and plea of guilty conclusively established that he knew all of the elements of the offenses with which he was charged, knew of the securities fraud conspiracy, intended to participate in it, and engaged in manipulative trading knowingly, intentionally, and with intent to defraud.

*Id.* at 549–50 (citations and quotation marks omitted). Because Jacobs's plea admissions establish his guilt notwithstanding his recent spin on the evidence, the same conclusion is appropriate here.

### B. Other Arguments

The remaining considerations further weigh in favor of denying Jacobs's request to withdraw. His motion was filed more than four months after he pleaded guilty, less than a month before his scheduled

sentencing. As he conceded in his brief, "this may be on the long-end of the spectrum of the allowable amount of time elapsed between plea and motion." (Def.'s Mem. Withdraw at 13.) And at oral argument, faced with the prospect of having to disclose attorney-client communications, Jacobs expressly abandoned his contention that his guilty plea was the product of ineffective assistance of counsel, and thus further abandoned his argument regarding the Government's discovery obligations.

Paul Jacobs admitted that his justification for withdrawal turns on his assertion of innocence, which, as explained above, is factually unconvincing and legally inadequate. He admitted conduct which shows his guilt to the crime of conspiracy, and his change of heart now is not a "fair and just" reason to allow him to withdraw this plea of guilty. Therefore, his motion is denied.

## IV. Conclusion

Accordingly, Defendant Paul Jacobs's Motion to Withdraw His Guilty Plea [Doc. # 112] is denied.

IT IS SO ORDERED.