JORDAN, Circuit Judge,
concurring:
As Judge Martin correctly explains, the plain language of the so-called 90-Day Provision, 42 U.S.C. § 1973gg-6(e)(2)(A), prohibits states from using programs, like Florida’s, to systematically remove suspected non-citizens from the voter rolls within 90 days of a federal election. There is little room for textual debate given the use of broad statutory language directed at “any program” to systematically remove ineligible voters from the rolls, and the failure to include lack of citizenship as one of the express exceptions to the bar against systematic removals during the 90-day quiet period. See Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (“[W]hen the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.”) (internal quotation marks omitted). Indeed, if the 90-Day Provision spelled out the exceptions to the bar on systematic removals, instead of cross-referencing them from the General Removal Provision (§ 1973gg6(a)(3)(A)-(B) & (4)(A)), the outcome in this case would be the statutory equivalent of a slam dunk, because the text would read like so:
(2)(A) A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.
(B) Subparagraph (A) shall not be construed to preclude—
*1287 (i) the removal of names from official lists of voters [at the request of a registrant; as provided by State law, by reason of criminal conviction or mental incapacity; or the death of the registrant]; or
(ii) correction of registration records pursuant to this subchapter.
This case is difficult because the exceptions to the 90-Day Provision also constitute (with slight changes in language) the permissible bases for the removal of persons from the voter rolls at any time under the General Removal Provision, and an “established canon of construction [is] that similar language contained within the same section of statute must be accorded a consistent meaning.” Nat’l Credit Union Admin. v. First Nat’l Bank & Trust Co., 522 U.S. 479, 501, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). If the limited exceptions to the 90-Day Provision mean that states cannot use systematic programs to remove non-citizens from the voter rolls within 90 days of a federal election, then — because of the symmetry of the 90-Day Provision and the General Removal Provision — it would appear to follow that states also cannot remove non-citizens from the voter rolls at any time. See United States v. Florida, 870 F.Supp.2d 1346, 1349 (N.D.Fla.2012). Such a result is instinctively difficult to accept, and may require courts to decide to what extent Congress can constitutionally limit the states’ authority to determine the qualifications of eligible voters in federal elections. See U.S. Const, art. I, §§ 2, 4; Arda v. Detzner, 908 F.Supp.2d 1276, 1284 (S.D.Fla.2012). Cf. Arizona v. Inter Tribal Council of Arizona, Inc., — U.S.-, 133 S.Ct. 2247, 2258-59, 186 L.Ed.2d 239 (2013) (“Since the power to establish voting requirements is of little value without the power to enforce those requirements, ... it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications.”).
To avoid the problems created by this interaction between the 90-Day and General Removal Provisions, we would welcome the venerable doctrine of constitutional avoidance if it were “fairly possible” to read the statutory language in any other way. See Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932). “But even so important a canon of statutory construction as that favoring the avoidance of serious constitutional questions does not always carry the day,” Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 437,115 S.Ct. 2227,132 L.Ed.2d 375 (1995) (O’Connor, J., concurring in part and concurring in the judgment) (emphasis in original), and it does not do so here because it would require us to give the NVRA a plainly a textual reading. See Salinas v. United States, 522 U.S. 52, 60-61, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (“[Although] [statutes should be construed to avoid constitutional questions, ... this interpretive canon is not a license for the judiciary to rewrite language enacted by the legislature.... Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the powers vested in Congress[.]”) (internal quotation marks and citations omitted).
Like the district court in Florida, 870 F.Supp.2d at 1350, I am not persuaded by the Secretary’s argument that the word “registrant” in the General Removal Provision should be read to mean only a person who could properly register to vote in the first place. The NVRA does not define “registrant,” and we must therefore give the word its “ordinary meaning.” See Taniguchi v. Kan Pac. Saipan, Ltd., — U.S. -, 132 S.Ct. 1997, 2002-03, 182 L.Ed.2d 903 (2012). In 1993, when Congress enacted the NVRA, “registrant” meant “one who registers; [especially] one *1288 who by virtue of securing an official registration obtains a specific right or title of possession and use.” Webster’s Third New International Dictionary 1912 (1993). See also 2 The New ShorteR Oxford English Dictionary 2528 (1993) (a registrant is “[a] person who registers, [especially] a person who by so doing gains a particular entitlement”). Given this ordinary meaning of the word, it is linguistically incorrect to say that a person is a “registrant” only if he or she is legally eligible to receive the benefits that come with registration. Indeed, a person can register for something even if he is not entitled to the ensuing benefits. That is the reason why the General Removal Provision lists several circumstances where registrants may be “removed from the official list of eligible voters.” 42 U.S.C. § 1973gg-6(a)(3).
As made clear by the parties’ briefs, each possible reading of the NVRA’s 90-Day and General Removal Provisions does some present or future violence to the statutory scheme. Given the choice, and under the circumstances here, I opt for the reading that applies the statutory text as written and surrender the interpretation that comes from a purpose-driven view of the Act and concomitant desire to avoid future constitutional questions. I do this because this case calls on us to interpret only one provision of the NVRA, the 90-Day Provision, and it is certainly reasonable (and constitutional) for Congress to limit systematic removals of noncitizens from the voter rolls within the 90-day quiet period. Stated differently, the result in this case is not an absurd one. See Durr v. Shinseki, 638 F.3d 1342, 1349 (11th Cir.2011) (explaining that the absurdity canon applies only in the “rare situations where the plain language of a statute, at least where read in isolation, yields a result that is both absurd and completely at odds with the entire statutory context in which the language is found”).
Any constitutional problems would arise only in a future case squarely presenting the application of the General Removal Provision. Before any such case arises, Congress has the ability to change the language of the General Removal Provision (as well as the ability to modify the exceptions to the 90-Day Provision if it so desires). Should it not do so, the court addressing such a future case may have to confront the argument that Congress drafted a portion of the NVRA in an unconstitutional manner.
With these observations, I join Judge Martin’s opinion for the court in full.