337 F.Supp.2d 15 (2004)
UNITED STATES of America, Plaintiff,
v.
PHILIP MORRIS USA, INC. f/k/a Philip Morris, Inc. et al. Defendants.
No. CIV.A. 99-2496(GK).
United States District Court, District of Columbia.
July 8, 2004.
As Amended August 10, 2004.
*16 David Charles Shonka, Federal Trade Commission, Office of General Counsel, Washington, for Federal Trade Commission, Movant.
David B. Alden, Randal S. Baringer, Oail Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, William M. Bailey, Collier Shannon Scott, PLLC, Washington, DC, Peter John Biersteker, Jones Day, Washington, DC, for R.J. Reynolds Tobacco Company, Defendant.
C. Ian Anderson, Davis, Polk & Wardwell, New York, NY, Steven M. Barna, Ben M. Germana, Wachtell, Lipton, Rosen & Katz, New York, NY, Jeanna Maria Beck, Floyd E. Boone, Brian K. Esser, Murray R. Garnick, Michael R. Geske, Kevin M. Green, Peter Thomas Grossi, Jr, Ryan David Guilds, Susan Louise Lyndrup, Arnold & Porter, Washington, DC, Lauren J. Bernstein, Winston & Strawn, New York, NY, Bradley E. Lerman, Winston & Strawn, Chicago, IL, Jay L. Levine, Winston & Strawn, Washington, DC, Nick Malhotra, Melissa L. Marglous, Duane J. Mauney, Arnold & Porter, Washington, DC, Richard H. Burton, Cynthia S. Cecil, Cindy L. Gantnier, Hunton & Williams, Richmond, VA, Matthew Campbell, Christopher J. Cullen, Winston & Strawn LLP, Washington, DC, Jane E. Chang, Winston & Strawn LLP, Washington, DC, James Lewis Brochin, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, Ashley Cummings, Hunton & Williams, Atlanta, GA, Thomas J. Frederick, Winston & Strawn, Chicago, IL, Elizabeth D. Jensen, Winston & Strawn, Chicago, IL, Daniel C. Jordan, Hunton & Williams, McLean, VA, for Philip Morris USA Inc., Philip Morris Companies, Inc., Altria Group, Inc., Defendants.
Kenneth N. Bass, Kirkland & Ellis, Washington, DC, David M. Bernick, Michelle *17 H. Browdy, Kirkland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corporation, Defendant.
Kate Cumming Beardsley, BUC & Beardsley, Washington, DC, for Elan Corporation, PLC, Intervenor.
Jason Beckerman, Kirkland & Ellis LLP, Washington, DC, for Brown & Williamson Tobacco Corporation, the American Tobacco Company, Defendants.
Daniel R. Benson, Kasowitz, Benson, Torres, Friedman, L.L.P., New York, NY, for the Liggett Group, Inc., Defendant.
Judah Best, Debevoise & Plimpton, Washington, DC, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Stephen Dudley Brody, U.S. Department of Justice, Tobacco Litigation Team, Washington, DC, Renee Brooker, U.S. Department of Justice, Civil Division, Washington, DC, Sharon Yvette Eubanks, U.S. Department of Justice, Washington, DC, J. Patrick Glynn, U.S. Department of Justice, Washington, DC, for United States of America, Plaintiff.
Timothy M. Broas, Winston & Strawn LLP, Washington, DC, Richard P. Cassetta, Thompson Coburn, LLP, St. Louis, MO, for Altria Group, Inc., British American Tobacco (Investments) Ltd., Brown & Williamson Tobacco Corporation, Philip Morris USA Inc., R.J. Reynolds Tobacco Company, the Council for Tobacco Research-USA, Incorporated, the Tobacco Institute, Incorporated, Lorillard Tobacco Company, Defendants.
Michael P.A. Cohen, Washington Lawyers' Committee, Washington, DC, Leonard A. Feiwus, Julie R. Fischer, Kasowitz, Benson, Torres Friedman, L.L.P., New York, NY, for the Liggett Group, Inc., Defendant.
Michael V. Corrigan, Demetra Frawley, Simpson Thatcher & Barlett, New York, NY, for British American Tobacco., P.L.C., Defendant.
Patrick J. Coughlin, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., San Francisco, CA, for Cherokee Nation, Native Village of Barrow, Movants.
James M. Cox, Thompson & Coburn, LLP, St. Louis, MO, for Lorillard Tobacco Company, Defendant.
William Salvatore D'Amico, Chadbourne & Parke, Washington, DC, Roy T. Englert, Jr., Robbins, Russell, Englert, Orseck & Untereiner, Washington, DC, for British American Tobacco (Investments) Ltd., Defendant.
Karen McCartan DeSantis, Kirkland & Ellis LLP, Washington, DC, Leign Ann Dowden, King & Spalding, Atlanta, GA, Deirdre A. Fox, Kirkland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corporation, Defendant.
Thomas A. Duncan, Paige Q. Szajnuk, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Company, Defendant.
Alvin Bertram Dunn, Shaw Pittman LLP, Washington, DC, for British American Tobacco Australia Services, Ltd, Movant.
Warren Neil Eggleston, Howrey Simon Arnold & White, LLP, Washington, DC, Kenneth Anthony Gallo, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Washington, DC, for the Liggett Group, Inc., Defendant.
Clausen Jr. Ely, James Alexander Goold, Covington & Burling, Washington, DC, for the Tobacco Institute, Incorporated, Defendant.
Julian K. Fite, Cherokee Nation, Tahlequah, OK, for Cherokee Nation, Native Village of Barrow, Movants.
*18 Harold K. Gordon, Jones, Day, Reavis & Pogue, New York, NY, Karen O'Brien Hourigan, Jones Day, Washington, DC, Patrick L. Hubbard, Jones Day, Washington, DC, Elizabeth P. Kessler, Jones, Day, Reavis & Pogue, Columbus, OH, for R.J. Reynolds Tobacco Company, Defendant.
Steven D. Gordon, Holland & Knight, L.L.P., Washington, DC, for Glaxosmithkline Consumer Healthcare, L.P., Smithkline Beecham Corp., Intervenors.
Christy L. Henderson, Hunton & Williams, Richmond, VA, for Philip Morris USA Inc., Defendant.
Dennis H. Hranitzky, Debevoise & Plimpton, New York, NY, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Timothy M. Hughes, Chadbourne & Parke, New York, NY, for British American Tobacco (Investments) Ltd., Defendant.
William D. Iverson, Covington & Burling, Washington, DC, for John P. Rupp, Movant.
Jason T. Jacoby, Hunton & Williams, Richmond, VA, for Altria Group, Inc., Defendant.
Frank Janecek, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, for Cherokee Nation, Native Village of Barrow, Movants.
Marc E. Kasowitz, Kasowitz, Benson, Torres Friedman, L.L.P., New York, NY, for the Liggett Group, Inc., Defendant.
Steven Klugman, Debevoise & Plimpton, Washington, DC, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Neil H. Koslowe, Shearman and Sterling LLP, Washington, DC, for British American Tobacco Australia Services, Ltd, Movant.
Joseph A. Kresse, Covington & Burling, Washington, DC, for the Tobacco Institute, Incorporated, Defendant.
Kevin C. Lombardi, Debevoise & Plimpton, Washington, DC, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, for the Liggett Group, Inc., Defendant.
Stephen Paul Mahinka, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Pfizer, Inc., Intervenor.
William Charles Hendricks, III, Andrew Martin McCormack, King & Spalding, Washington, DC, Dawn D. Marchant, Kirkland & Ellis LLP, Washington, DC, Steven D. McCormick, Kirkland & Ellis, Chicago, IL, Paul Lamont McDonald, Philadelphia, PA, for Brown & Williamson Tobacco Corporation, Defendant.
Aaron H. Marks, Kasowitz, Benson, Torres Friedman, L.L.P., New York, NY, for the Liggett Group, Inc., Defendant.
Robert Francis McDermott, Jr., Jones Day, Washington, DC, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA., Minneapolis, MN, for R.J. Reynolds Tobacco Company, Defendant.
Alfred McDonnell, Arnold & Porter, Denver, CO, for Philip Morris USA Inc., Philip Morris Companies, Inc., Altria Group, Inc., Defendants.
Mary Elizabeth McGarry, Simpson, Thacher & Bartlett, New York, NY, for British American Tobacco., P.L.C., Defendant.
Amy L. McGinnis, Arnold & Porter, Washington, DC, for Philip Morris USA Inc., Philip Morris Companies, Inc., Altria Group, Inc., Defendants.
Jack McKay, Shaw Pittman LLP, Washington, DC, for British American Tobacco Australia Services, Ltd, Movant.
*19 David Mendelson, Kirkland & Ellis LLP, Washington, DC, for the American Tobacco Company, Brown & Williamson Tobacco Corporation, Defendants.
Bruce G. Merritt, Debevoise & Plimpton, Washington, DC, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Steven S. Michaels, Debevoise & Plimpton LLP, New York, NY, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Kendall Millard, Arnold & Porter, Washington, DC, for Philip Morris USA Inc., Philip Morris Companies, Inc., Altria Group, Inc., Defendants.
Lloyd Benton Miller, Sonosky, Chambers, Sachse, Miller & Munson, Anchorage, AK, for Cherokee Nation, Native Village of Barrow, Movants.
Michael B. Minton, Thompson Coburn LLP, St. Louis, MO, for Lorillard Tobacco Company, Defendant.
Joseph P. Moodhe, Debevoise & Plimpton, New York, NY, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Garyowen P. Morrisroe, Chadbourne & Parke, New York, NY, for British American Tobacco (Investments) Ltd., Defendant.
Stephen Printiss Murphy, Reed Smith, Washington, DC, for Novartis Consumer Health Inc, Intervenor.
Erik D. Nadolink, Hunton & Williams, Richmond, VA, Kevin J. Narko, Luke A. Palese, Winston & Strawn, Chicago, IL, Stacy J. Pollock, Arnold & Porter, Washington, DC, for Philip Morris USA Inc., Philip Morris Companies, Inc., Altria Group, Inc., Defendants.
J. William Newbold, Thompson Coburn LLP, St. Louis, MO, for Lorillard Tobacco Company, Defendant.
F. John Nyhan, Chadbourne & Parke, New York, NY, Lawrence Saul Robbins, Robbins, Russell, Englert, Orseck & Untereiner, Washington, DC, Lawrence Edward Savell, Bruce G. Sheffler, David L. Wallace, Jessica L. Zellner, Chadbourne & Parke LLP, New York, NY, Arnon D. Siegel, Robbins, Russell, Englert, Orseck & Untereiner, Washington, DC, for British American Tobacco (Investments) Ltd., Defendant.
Stephen R. Patton, Kirland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corporation, Defendant.
Robert M. Rader, Winston & Strawn LLP, Washington, DC, for British American Tobacco (Investments) Ltd., British American Tobacco., P.L.C., the American Tobacco Company, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, Philip Morris USA Inc., R.J. Reynolds Tobacco Company, the Council for Tobacco Research-USA, Incorporated, the Liggett Group, Inc., the Tobacco Institute, Incorporated, Philip Morris Companies, Inc., Defendants.
Cheryl Grissom Ragsdale, Hunton & Williams, Richmond, VA, Amy Elizabeth Ralph-Mudge, Arnold & Porter, Washington, DC, for Philip Morris USA Inc., Philip Morris Companies, Inc., Altria Group, Inc., Defendants.
Jonathan Redgrave, Paul Sommer Ryerson, Jones Day, Washington, DC, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston-Salem, NC, Ivan C. Smith, Jones Day Reavis & Pogue, Columbus, OH, Scott C. Walker, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, John Buchanan Williams, Collier Shannon Scott, PLLC, Washington, DC, Geoffrey T. Wright, Jones Day, Washington, DC, for R.J. Reynolds Tobacco Company, Defendant.
*20 Fred W. Reinke, Clifford Chance US, LLP, Washington, DC, for the Liggett Group, Inc., Defendant.
Rebecca I. Ruby, Goodwin Procter, LLP, Washington, DC, for Brown & Williamson Tobacco Corporation, Defendant.
David Runtz, Debevoise & Plimpton, New York, NY, for the Council for Tobacco Research-USA, Incorporated, Defendant.
Bruce D. Ryder, Thompson Coburn LLP, St. Louis, MO, for Lorillard Tobacco Company, Defendant.
James Miller Rosenthal, Arnold & Porter, Washington, DC, Michele B. Scarponi, Hunton & Williams, Richmond, VA, Patricia M. Schwarzschild, Hunton & Williams, Richmond, VA, Sharma Jnatel Simmons, Arnold & Porter, Washington, DC, Jonathan Louis Stern, Arnold & Porter, Washington, DC, Thomas M. Stimson, Winston & Strawn LLP, Washington, DC, Sharon L. Taylor, Arnold & Porter, Washington, DC, Seth Barrett Tillman, Chambers of Judge William J. Martini, Newark, NJ, Ricardo E. Ugarte, Winston & Strawn, Chicago, IL, Herbert M. Wachtell, Jeffrey M. Wintner, Wachtell, Lipton, Rosen & Katz, New York, NY, Jeffrey Wagner, Winston & Strawn, Chicago, IL, Anne McBride Walker, Leslie Wharton, Arnold & Porter, Washington, DC, Dan K. Webb, Anastasia G. Weis, Winston & Strawn, Chicago, IL, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for Philip Morris USA Inc., Altria Group, Inc., Defendants.
Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Washington, DC, for British American Tobacco., P.L.C., Defendant.
Edward Craig Schmidt, Matthew David Schwartz, Thompson Coburn, LLP, Washington, DC, for Lorillard Tobacco Company, Defendant.
D. Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Impax Laboratories, Inc., Intervenor.
Douglas G. Smith, Kirkland & Ellis, Chicago, IL, Dan H. Willoughby, King & Spalding, Atlanta, GA, for Brown & Williamson Tobacco Corporation, Defendant.
Nancy E. Straub, Kasowitz, Benson, Torres Friedman, L.L.P., New York, NY, for the Liggett Group, Inc., Defendant.
Guy Miller Struve, Davis Polk & Wardwell, New York, NY, for Altria Group, Inc., Defendant.
David Patrick Sullivan, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Corporation, the American Tobacco Company, Defendants.
Keith Allen Teel, John Vanderstar, Covington & Burling, Washington, DC, for the Tobacco Institute, Incorporated, Defendant.

MEMORANDUM OPINION
KESSLER, District Judge.
This matter is now before the Court on Defendants'[1] Motion for Partial Summary Judgment With Respect to the Government's Nicotine Manipulation and Addiction Allegations ("Motion"). Upon consideration of the Motion, the Government's Opposition, the Reply, and the entire record *21 herein, and for the reasons stated below, the Motion is denied.
I. BACKGROUND
Plaintiff, the United States of America (the "Government"), has brought this suit against the Defendants pursuant to Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.[2] Defendants are manufacturers of cigarettes and other tobacco-related entities. The Government seeks injunctive relief and billions of dollars for what it alleges to be Defendants' unlawful conspiracy to deceive the American public. The Government's Amended Complaint describes a four-decade long conspiracy, dating from at least 1953, to intentionally and willfully deceive and mislead the American public about, among other things, the harmful nature of tobacco products, the addictive nature of nicotine, and the possibility of manufacturing safer and less addictive tobacco products. Amended Complaint ("Am.Compl.") at ¶ 3.
In the present Motion, Defendants challenge one sub-scheme of the overarching conspiracy, namely the Government's allegations that they "understood nicotine's addictive properties" and have been "developing and using highly sophisticated technologies to deliver nicotine in precisely calculated ways that are more than sufficient to create and sustain addiction." Id. at ¶¶ 72, 77. In support of these allegations, the Government offered, among other pieces of evidence, the testimony of the chief executive officers ("CEOs") of six major American cigarette manufacturers at the televised Congressional hearings held by Rep. Henry Waxman in April, 1994 examining whether nicotine should be regulated as a drug under the Food and Drug Administration Act, 21 U.S.C. § 321(G) (2001) ("Waxman Hearings"). At those hearings, each of the CEOs denied under oath any manipulation of nicotine content. The Government claims that this testimony constituted two acts of fraudulent denial of nicotine manipulation in furtherance of the alleged conspiracy to mislead the American public. The Government also relies on twenty-two other acts it alleges were in furtherance of a fraudulent scheme to deny that smoking is addictive.
Defendants deny all the nicotine manipulation and addiction claims and ask the Court to dismiss with prejudice the alleged racketeering acts related to this sub-scheme.[3]See Motion, at 2.
*22 Defendants advance three principal arguments why these racketeering acts should be dismissed: (1) their opinions concerning nicotine manipulation and addiction do not constitute RICO predicate acts of mail and wire fraud; (2) their conduct is protected by the First Amendment; and (3) the testimony of the CEOs before Congress is afforded absolute immunity under the common law.
None of these arguments entitle Defendants to summary judgment. First, the nicotine manipulation and addiction acts cannot be assessed in isolation, but must be evaluated in the context of the totality of the Government's fraud case. Second, whether Defendants have manipulated the nicotine content of their cigarettes, whether they have falsely denied doing so, and whether they have falsely denied that nicotine is addictive, involve disputed factual issues of intent and knowledge that can only be resolved at trial. Third, Defendants' sworn denials of nicotine manipulation and addiction are not immune from liability under common law. Finally, whether any of the challenged racketeering acts are properly defined as "petitioning," and thus immunized under the Noerr-Pennington doctrine, is a factual matter in dispute which must also be resolved at trial. Consequently, the Government must be given the opportunity to prove its claims about Defendants' alleged nicotine manipulation and addiction sub-scheme at trial.
II. SUMMARY JUDGMENT STANDARD
Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C.Cir.1989).
Additionally, "if the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." Greenberg v. FDA, 803 F.2d 1213, 1216 (D.C.Cir.1986). At the summary judgment stage, "the court is not to make credibility determinations or weigh the evidence." Dunaway v. Int'l Brotherhood of Teamsters, 310 F.3d 758, 761 (D.C.Cir.2002).
III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT
A. Claims Relating to Nicotine Manipulation and Addiction Must Be Decided in the Context of the Entire Alleged Scheme to Defraud
The Government has alleged the existence of a pervasive, overarching scheme to defraud the public of money which extends back fifty years and continues to the present. According to the Government, this conspiracy has been carried out through a variety of sub-schemes, one of which is the nicotine manipulation and addiction sub-scheme. The other sub-schemes *23 allege that Defendants have (1) advertised, marketed, and promoted cigarettes to children while repeatedly denying such conduct, Am. Compl., at ¶¶ 94-97, 100; (2) disseminated false and misleading statements denying that smoking causes disease, United States' Master Rule 7.1/56.1 Statement of Material Facts Demonstrating the Existence of Genuine Issues for Trial ("Master Stmt"), ¶¶ 227-384, 572-672; (3) fraudulently promised to sponsor independent research into the health risks of smoking, id. at ¶¶ 385-571; and (4) marketed "low tar" cigarettes as less hazardous than other cigarettes, even though they knew that smokers of these cigarettes are "not appreciably reducing their health risk." Am. Compl. at ¶ 86, 87.
In the pending Motion, Defendants ask the Court to carve out the nicotine manipulation and addiction racketeering acts and view them in isolation. They then argue that these particular racketeering acts, when viewed as stand-alone incidents, can not meet the proof requirements for mail or wire fraud. See Motion, at 16-17.
Defendants ignore that the claims relating to alleged nicotine manipulation, denial of nicotine manipulation, and denial of the addictiveness of nicotine are just one component of the Government's allegations of an overarching scheme to defraud. See Govt's Opp'n., at 3-4. The Government's theory is that the component sub-schemes described above collectively served the goal of sustaining and expanding the market for Defendants' cigarettes and maximizing their profits. Id. Under that theory, Defendants used the televised Congressional hearings, their press releases and other public statements to further their overarching scheme to defraud by attempting to mislead both Congress and the American public regarding the truth of the addictiveness of nicotine and their manipulation of it in cigarettes. See Id. at 11, 14.
In making a determination on summary judgment, the Court must evaluate the over-all scheme to defraud based on the totality of the circumstances alleged, including the relationship of the challenged acts to the other sub-schemes. See United States v. Godwin, 272 F.3d 659, 666-667 (4th Cir.2001)("In order to establish ... the scheme to defraud, the Government must prove that the defendants acted with the specific intent to defraud, which may be inferred from the totality of the circumstances and need not be proven by direct evidence.") (internal citation omitted). Because the sub-schemes are interdependent, the totality of circumstances necessary to evaluate the challenged racketeering acts goes beyond those particular acts challenged in this Motion and can only be meaningfully assessed in the context of the entirety of the Defendants' alleged conduct.
B. Material Issues of Intent, Knowledge, and Good Faith Are Very Much in Dispute
Summary judgment with regard to the nicotine manipulation and addiction claims is also inappropriate because material factual issues of intent and knowledge remain very much in dispute. The Government has put forth evidence, including expert opinions, to show that Defendants have intentionally manipulated nicotine content and delivery in their cigarettes and have knowingly made false and misleading statements denying that either nicotine or smoking is addictive. See Master Stmt, at ¶¶ 595-636.
For example, the Government has offered a June 1966 report, entitled "Market Potential of a Health Cigarette," by William L. Dunn, a onetime Principal Scientist for Philip Morris, which states that without nicotine, a health cigarette would not sell:
*24 Flavor and nicotine are both necessary to sell a cigarette. A cigarette that does not deliver nicotine cannot satisfy the habituated smoker and cannot lead to habituation, and therefore would almost certainly fail.
Govt's Opp'n., at 7 (citing Master Stmt, at ¶ 597).
The Government offers evidence that, while Defendants knew nicotine was addictive and the primary reason people continued smoking, they intentionally withheld this data and attempted to discredit independent research which corroborated it. See Master Stmt, at ¶¶ 637-57. Therefore, the Government argues, Defendants' suggestion that their public statements on the issue of nicotine addiction were mere opinions that echoed the current state of thinking in the scientific community were untrue, flatly misleading, and deceptive.[4]See Govt's Opp'n., at 11.
The Government has put forth evidence to show that Defendants' denials of nicotine manipulation were also knowingly false. For example, in addition to the Waxman Hearings, at which the CEOs of six Defendants denied manipulation of nicotine, the Government offered a 1994 R.J. Reynolds advertisement stating, "[w]e do not increase the level of nicotine in any of our products in order to addict smokers. Instead of increasing the nicotine levels..., we have in fact worked hard to decrease tar and nicotine." Master Stmt, at ¶ 678.
As proof of the falsity of this 1994 statement, the Government points to Defendants' use of cigarette design features, such as ventilation holes and burn accelerants, in order to deliver more nicotine than is stated on the cigarette packaging. See id. at ¶¶ 712-721. The Government also alleges that cigarette smoke pH is modified through the use of ammonia and other additives to deliver more nicotine "kick" to the smoker. Id. at ¶¶ 729-764. Thus, according to the Government, Defendants' suggestion that the testimony of the CEOs at the Waxman Hearings was merely their personal "opinions" flies in the face of their corporate activities.
The question of fraudulent intent is a question of fact that is rarely appropriate for summary judgment. Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711 (2d Cir.1991); see ABB Daimler-Benz Transport. (N. Amer.), Inc. v. Nat'l RR Passenger Corp., 14 F.Supp.2d 75, 86 (D.D.C.1998). Because the Government, as non-movant, has demonstrated that there are disputed material facts regarding whether the Defendants intentionally manipulated nicotine content in cigarettes and whether their denials of such manipulation or of nicotine's addictiveness were knowingly false, Defendants are not entitled to summary judgment. See Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) ("it was error ... for the District Court to resolve the disputed fact of motivation at the summary judgment stage" where non-movant had presented circumstantial evidence in support of their claim).
C. Neither the First Amendment nor Common Law Justify Summary Judgment on Claims Concerning Nicotine Manipulation and Addiction
Defendants assert, on a variety of grounds, that certain of the Racketeering *25 Acts on which the Government bases its claims of nicotine manipulation and addiction constitute activities protected by the First Amendment and the common law. For the reasons set forth below, these arguments do not justify a grant of summary judgment.
1. Whether the Government Has Met the Heightened Standard of Proof To Demonstrate Fraud Based on Defendants' Speech Is a Question Properly Left for Trial
According to Defendants, their CEOs' testimony at the Waxman Hearings as well as other publicly expressed opinions, constituted the exercise of their First Amendment right to free speech. See Motion, at 18. As such, Defendants assert that they are entitled to the full panoply of First Amendment protections. Id. at 19. Defendants argue that because the statements were offered in the context of a "robust policy debate," the Government must prove, by clear and convincing evidence (rather than just the "preponderance of the evidence" standard) that Defendants' statements concerning nicotine manipulation and addiction were intentionally fraudulent. Id.
The Government responds that Defendants' statements concerning nicotine manipulation and addiction denial constitute conduct in furtherance of the multifaceted scheme to defraud, as described above, and are therefore entitled to no First Amendment protections.
The Supreme Court has recently reiterated, albeit in a different factual context, that "the First Amendment does not shield fraud." Illinois ex rel. Madigan v. Telemarketing Associates, Inc., 538 U.S. 600, 123 S.Ct. 1829, 1836, 155 L.Ed.2d 793 (2003). In Madigan, the Court held that "[w]hat the First Amendment ... emphatically do[es] not require ... is a blanket exemption from fraud liability for a [defendant] who intentionally misleads [his audience]." Id. at 1831; see also Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (the intentional lie [does not] materially advance society's interest in uninhibited, robust, and wide-open debate on public issues").
However, in order to ensure the greatest protection for speech, the State bears the full burden of proof in any fraud action based on false, misleading, or deceptive statements. In Madigan, the Court found that the State was required to prove every element of fraud by clear and convincing evidence. Madigan, at 1831. "Exacting proof requirements of this order, in other contexts, have been held to provide sufficient breathing room for protected speech." Id. at 1841; see New York Times Co. v. Sullivan, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (requiring a showing of "actual malice" for allegedly fraudulent statements in a defamation case); Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 502, 104 S.Ct. 1949, 80 L.Ed.2d 502 (same). Determining the sufficiency of the Government's showing of fraud necessarily involves an evaluation of the evidence presented at trial.
2. There Are Material Facts in Dispute About Whether the Challenged Predicate Acts Occurred in the Context of Petitioning the Government, as Required under the Noerr-Pennington Doctrine
Defendants seek to immunize all of their public denials about nicotine manipulation and addiction under the Noerr-Pennington *26 doctrine.[5] "The `doctrine is a direct application of the Petition Clause' of the First Amendment." Falise v. American Tobacco Co., 94 F.Supp.2d 316, 350 (E.D.N.Y.2000) (quoting Kottle v. Northwest Kidney Centers, 146 F.3d 1056, 1059) (9th Cir.1998).[6]
According to Defendants, all of the denials of nicotine manipulation and addiction alleged as predicate acts "are statements of opinion, made in the course of petitioning the Government, and are fully protected by the First Amendment." See Motion, at 27. For example, in addition to the CEOs' testimony at the Waxman Hearings, Defendants cite Racketeering Act # 114, a May, 1994 letter from Philip Morris to Rep. Waxman expressing the view that nicotine is not addictive, in support of their assertion that the challenged acts are primarily aimed at influencing governmental action.[7] However, even if these two examples, the CEOs' testimony and the letter, do constitute "petitioning," none of the other challenged Acts can be so described. They are simply press releases aimed at influencing the public, not government officials. See e.g., Racketeering Acts Nos. 56, 79, 81, 132, 133.
Moreover, the Noerr-Pennington doctrine does not automatically characterize (and therefore immunize) every public relations campaign as "petitioning" of the government.[8] Here, whether the conduct in question is petitioning or public relations is very much in dispute. The Government contends that the conduct was undertaken "pursuant to a multifaceted fraudulent scheme aimed at defrauding the public," not as an exercise of First Amendment rights to influence legislators. *27 Govt's Opp'n., at 28 n. 29. Because a determination of whether the challenged predicate acts constitute petitioning is a fact-intensive inquiry that can only be resolved at trial, Defendants are not entitled to summary judgment on the basis of the Noerr-Pennington doctrine. See Allied Tube & Conduit Corporation, 486 U.S. 492 at 499, 108 S.Ct. 1931, 100 L.Ed.2d 497 (applicability of Noerr immunity "varies with the context and the nature of the activity").
3. The Common Law Does Not Afford Absolute Immunity to the CEOs' Testimony before Congress
Defendants' argument that their CEOs' testimony at the Waxman Hearings, even if false, cannot provide any basis for civil liability because statements to a legislature are afforded "absolute immunity" at common law relies upon a misinterpretation of the law.[9] While the common law provides absolute immunity for witnesses in judicial proceedings in order to encourage candor without fear of prosecution, the immunity in legislative proceedings extends only to actions for defamation or libel. See Webster I, at 5 ("[a]n individual must feel unrestrained by potential defamation liability when addressing the legislature") (emphasis added).[10]
The Supreme Court and other federal courts have rejected Defendants' claim that the common law immunity from defamation and libel suits, which protects litigants in judicial proceedings, amounts to "absolute immunity" for fraudulent conduct. See Tower v. Glover, 467 U.S. 914, 921-22, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (public defender's common law immunity from defamation liability did not extend to allegations that he conspired to violate plaintiff's civil rights); Robinson v. Volkswagenwerk AG, 940 F.2d 1369, 1373-74 (10th Cir.1991) (law firm not immune from civil liability for fraud claim based on false discovery answers despite common law immunity from defamation or libel actions arising from attorney's courtroom conduct).
Accordingly, because the Government has not brought claims for defamation or libel based on the CEOs' testimony before Congress, the common law immunity which may attach to such testimony would, in any event, not be absolute.
III. CONCLUSION
For all the foregoing reasons, the Defendants are not entitled to summary judgment as to claims of nicotine manipulation and addiction, and their Motion is denied.
An Order will accompany this opinion.
NOTES
[1] Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Research-U.S.A., Inc., The Tobacco Institute, Inc., and The Liggett Group, Inc.
[2] The Complaint originally contained four claims under three statutes. On September 28, 2000, the Court dismissed Count One (pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651, et seq.) and Count Two (pursuant to the Medicare Secondary Payer provisions of the Social Security Act, 42 U.S.C. §§ 1395y(b)(2)(B)(ii) & (iii)). See United States v. Philip Morris, 116 F.Supp.2d 131 (D.D.C.2000).
[3] RICO prohibits individuals or entities from engaging in racketeering activity associated with an "enterprise." To successfully state a RICO claim, the Government must allege "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." Salinas v. United States, 522 U.S. 52, 62, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)(internal citation omitted). "Racketeering activity" includes, among other things, acts prohibited by any one of a number of criminal statutes. 18 U.S.C. § 1961(1). A "pattern" is demonstrated by two or more instances of "racketeering activity" ("predicate acts") that occur within ten years of one another. 18 U.S.C. § 1961(5). In this case, the alleged predicate acts are violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

The Government has alleged a total of 148 "racketeering acts" in support of its RICO claims. Of these 148 racketeering acts, Defendants identify 27 as related to the nicotine manipulation and addiction sub-scheme. They are Racketeering Acts Nos. 15, 25, 37, 39, 53, 56, 58, 60, 63, 71, 72, 74, 75, 79, 81, 101, 103, 104, 109, 110, 11, 112, 113, 114, 116, 132, 133.
[4] For example, a November 15, 1961 memorandum from Charles Ellis, a BATCo scientific advisor, states that "Smoking demonstrably is a habit based on a combination of psychological and physiological pleasure, and it also has strong indications of being an addiction... there are sufficient similarities to justify stating that smokers are nicotine addicts." Govt's Opp'n., at 8.
[5] The doctrine has its origins in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)(holding that "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly") and United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The Noerr Court adopted its narrowing construction of the Sherman Act "in significant part as a means to avoid finding a conflict between [the Act] and the First Amendment right to petition." Whelan v. Abell, 48 F.3d 1247, 1254 (D.C.Cir.1995).
[6] Noerr-Pennington immunity is not absolute. It allows a "sham" exception for "situations in which persons use the governmental process  as opposed to the outcome of that process  as a ... weapon. A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." City of Columbia v. Omni Outdoor Advertising, 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) (emphasis in original) (internal citations omitted).
[7] This letter from a Philip Morris scientist, Dr. Cathy Ellis, denied that nicotine was addictive in the absence of "intoxication, pharmacological tolerance, and physical dependence in a manner that would impair the smokers' ability to exercise a free choice to continue or quit smoking."
[8] See Falise, 94 F.Supp.2d at 351-352. Plaintiffs alleged that defendant tobacco manufacturers had historically invested RICO racketeering funds in a "scorched earth litigation strategy" intimidating them into not suing defendants. Defendants argued that the Noerr-Pennington doctrine immunized their earlier litigation strategies.

The court held that the Noerr-Pennington doctrine did not apply because the challenged conduct had nothing to do with petitioning. "Defendants, having been hailed into court in the earlier litigation, were clearly not exercising their right to petition the government." Instead, Defendants' right to utilize the tools of the adversarial process "invoke [d] issues of procedural due process under the Fifth and Fourteenth Amendments, rather than the First Amendment right to petition the government."
[9] Defendants cite only two cases actually addressing absolute immunity for testimony before a legislative body: Webster v. Sun Co., 731 F.2d 1,5 (D.C.Cir.1984) ("Webster I") and Webster v. Sun Co., 790 F.2d 157 (D.C.Cir.1986) ("Webster II"). Defendants cite these cases for the proposition that "voluntary communications to legislators are subject to absolute immunity...." Motion, at 25. In fact, the cases adopt 590A of the Restatement (Second) of Torts, under which statements before a legislature enjoy absolute immunity only from defamation liability. Webster I, at 5; Webster II, at 160-61.
[10] In addition, the Court of Appeals in Webster I expressly limited the scope of the immunity to protect only "unsolicited statements made to the legislature or its investigative arm." 731 F.2d at 5 (emphasis added). Here, as Defendants concede, "there is no question but that Congress sought information from the CEOs." Motion, at 26 n. 29.