NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-3219

THE KNIT WITH,
A Pennsylvania Partnership,
Appellant

v.

KNITTING FEVER, INC.; DESIGNER YARNS, LTD, A Corporation of England;
FILATURA PETTINATA V.V.G. DISTEFANO VACCARI & C. (S.A.S.), A Company
of Italy; SION ELALOUF; DIANE ELALOUF; JEFFREY J. DENECKE, JR.; JAY
OPPERMAN; DEBBIE BLISS

(D.C.# 2-08-cv-04221)

THE KNIT WITH,
Appellant

v.

EISAKU NORO & CO., LTD.; KNITTING FEVER, INC.;
SION ELALOUF; DIANE ELALOUF; JAY OPPERMAN
(D.C. # 2-08-cv-04775)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. Nos. 2-08-cv-04221/2-08-cv-04775)
District Judge: Hon. Ronald L. Buckwalter

Submitted pursuant the Third Circuit LAR 34.1(a)
May 23, 2014

BEFORE: McKEE, *Chief Judge*, CHAGARES, *Circuit Judge*,
and THOMPSON, *District Judge**

---

* The Honorable Anne E. Thompson, Senior District Judge for the United States District
Court for the District of New Jersey, sitting by designation.

1

OPINION**

McKEE, *Chief Judge*.

The Knit With ("TKW") appeals several orders the district court entered in TKW's suit alleging various claims under state and federal law. For the reasons that follow, we will affirm the district court.

**I.**

Because we write only for the parties who are familiar with the very involved procedural history of this matter, we need not discuss it in detail here.[1] Following numerous decisions and orders of the district court, the only claims remaining are counterclaims that Knitting Fever, Inc., ("KFI") brought for defamation and tortious interference with existing and prospective contracts. Thereafter, the parties filed cross motions for summary judgment. Although KFI sought summary judgment on its defamation claim only, the district court also addressed KFI's tortious interference claim. In a Memorandum and Opinion, dated August 8, 2012, the district court denied both parties' motions. *The Knit With v. Knitting Fever, Inc.*, 2012 WL 3235108 (E.D. Pa. Aug. 8, 2012).

---

** This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent
[1]The facts of this case have been recited in several of the district court's opinions. *See The Knit With v. Knitting Fever, Inc.*, 2008 WL 5381349, at *1-6 (E.D. Pa. Dec. 18, 2008); *The Knit With v. Eisaku Noro*, 2008 WL 5273582 ,at *1-3 (E.D. Pa. Dec. 19, 2008); *The Knit With v. Knitting Fever, Inc.*, 2011 WL 891871 at, *1-2 (E.D. Pa. Mar. 10, 2011).

As of August 8, 2012, KFI's counterclaims against TKW were outstanding. Nonetheless, on August 9, 2012, TKW filed a Notice of Appeal seeking review of all of the district court's orders dismissing its claims against the various defendants or granting summary judgment to the defendants on its various claims. Clearly, as of August 9, 2012, the orders appealed from did not dismiss all claims as to all parties and were not certified under Rule 54(b). However, on November 29, 2012, the district court entered an order accepting the parties' stipulated dismissal with prejudice of KFI's counterclaims against TKW pursuant to Rule 41(a)(1)(A)(ii).[2] Thus, this court does have jurisdiction over TKW's appeal.

## II. DISCUSSION

TKW makes a number of arguments in support of its appeal. Each is discussed separately below.

### A. The district court erred in granting summary judgment to all defendants on the warranty claims.[3]

---

[2] We cannot help but notice that after the parties executed the stipulated withdrawal of KFI's counterclaims, KFI's counsel wrote to the district court informing it of the stipulated withdrawal and further informing the district court that it was requesting leave to file a motion pursuant to 28 U.S.C. § 1927, seeking to impose excessive costs, expenses and attorneys' fees against TKW. In response, the district court wrote the following in a letter to KFI's counsel: "Continuing the litigation of this case by filing yet another motion is a subject to which, I hope, you would give serious consideration before incurring even more fees in what many times can become a rather lengthy proceeding itself."

    The court's apparent frustration with counsel is understandable.

[3] "We exercise plenary review over the District Court's decision to grant summary judgment and will use the same test applied below." *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 131 (3d Cir. 2005) (citation omitted). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

The district court granted summary judgment to all of the defendants on TKW's warranty claims under the applicable statute of limitations. *The Knit With v. Knitting Fever*, 2012 WL 2466616, at *2 (E.D. Pa. June 27, 2012).

Under Pennsylvania law, the statute of limitations for a breach of warranty is four years. 13 Pa. Cons. Stat. Ann. § 2725(a). TKW filed its first complaint on September 8, 2008. Therefore, for its warranty action to be timely, TKW had to show it purchased the yarns at issue from KFI after September 2004. TKW contended that there was one yarn delivery in the summer of 2005, on which the breach of warranty claims could proceed. However, the district court found that TKW failed to present any evidence of such a delivery. 2012 WL 2466616, at *10-16.

TKW contends that the district court's grant of summary judgment to the defendants on its warranty claims was error and makes a number of arguments in support of that contention. Its first argument is that the district court erred by determining a material factual dispute. TKW is referring to Internet postings on KFI's website by Jeffrey Denecke, Manager of Operations for KFI (and a defendant/appellee here) on October 19, 2006, and April 1, 2010 and April 16, 2012 Declarations made by Denecke in support of KFI's summary judgment motion. There, Denecke stated that TKW

_____

56(a). "Summary judgment is not appropriate, however, if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Santana Prods.*, 401 F.3d at 131 (citation and internal quotation marks omitted). "The moving party bears the burden to show that the non-moving party has failed to produce evidence sufficient to establish the existence of an element essential to its case." *Id.* (citation and internal quotation marks omitted).

4

purchased some of the yarns at issue here in June of 2005 (i.e., within the limitations period). TKW contends that KFI admitted the Internet posting was true, that this posting is direct evidence of a 2005 delivery, and that it is a sufficient basis to conclude that a delivery occurred within the limitations period. However, TKW claims that the district court weighed new inconsistent evidence and accepted the new evidence as true. In making this claim, TKW is referring to the two Declarations of Denecke, admitting the Internet posting, with the delivery date of 2005, but explaining, at length, that the 2005 date was an error; how and why it was erroneously made; and that the actual purchase date was June of 2004. *See* 2012 WL 2466616, at *8 (reciting the content of the April 1, 2010, Denecke Declaration). In short, contrary to TKW's contention, KFI never admitted that there was a delivery to TKW in 2005.

In the district court, TKW moved to strike Denecke's Declarations, alleging a number of technical and procedural grounds in support of that motion. However, the district court denied that motion. 2012 WL 2466616, at *7-10. TKW does not challenge that denial in its appeal. However, TKW does contend that, by not striking the Declarations, the district court determined a material factual dispute, i.e., that there was not a delivery to TKW in 2005. However, the district court did no such thing. It simply denied TKW's motion to strike the Declarations on the asserted technical and procedural grounds.

TKW's second argument is that the district court erred in granting summary judgment because it improperly weighed the evidence and accepted the Denecke Declarations as true. However, the district court found that the "evidence is so one-sided

5

that no fair-minded jury could reasonably find in favor of [TKW] on the issue of delivery." 2012 WL 2466616, at \*15. In addition, the district court noted "the lack of [TKW's] own paperwork regarding this alleged (2005) delivery" and TKW's inability to present the testimony of *any* witness who personally observed the delivery of the 2005 shipment" of the yarns at issue. *Id*. (emphasis in original).[4]

The district court concluded that "[t]he present matter is precisely the situation which the principles of *Anderson* and its progeny were designed to encompass." *Id*.[5] Other than simply stating that the district court improperly weighed the evidence, TKW offers no substantive challenge to this ruling.

TKW's third argument is that the district court misapprehended the personal knowledge requirement. This refers to a statement made in a declaration by James Casale, its principal and its lawyer, by which TKW attempted to show a delivery of the yarns at issue in 2005. The district court opined: "[b]y his own words, Mr. Casale has no personal knowledge about the receipt of the [yarn] shipment in 2005, but rather 'was informed' by some unknown individual. This Declaration fails to create any issue of fact regarding the 2005 shipment." 2012 WL 2466626, at \*12.

TKW contends that the district court's definition of "informed," is error because, the plain meaning of the term as defined in various dictionaries is "personal knowledge."

---

[4] TKW offered a Declaration by Dawn Casale, presumably the wife of TKW principal James Casale and an employee of TKW, in which she averred that she had personal knowledge of the 2005 delivery. However, in her deposition, she admitted that she had no such personal knowledge. The district court granted KFI's motion to strike her Declaration based on her lack of personal knowledge of any alleged 2005 delivery. 2012 WL 2466616 at \*3-7. TKW does not challenge that in its appeal.

[5] *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).

TKW's Br. at 18 (citing various standard English language dictionaries). However, we cannot say that the district court's construction of "I was informed" to exclude personal knowledge was arbitrary, fanciful or clearly unreasonable. *See Democratic Nat'l Comm. V. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012).

TKW's fourth argument is that procedural irregularities permeate the judgment. TKW contends that the district court erred by considering the Denecke's Revised April 16, 2012 Declaration, in which he showed the printing error that led to him misread KFI's sales records regarding the alleged 2005 delivery of the yarns at issue. However, we agree with the district court that this argument is baseless. The district court opined: "Mr. Denecke is a named defendant who has been timely identified as a witness in this case. [TKW] has had the opportunity to depose him. Accordingly, [TKW] has no legal foundation on which to object to his Revised Declaration." 2012WL 2466616, at *9 n.6. In addition, we note that TKW does not articulate any resulting prejudice from the district court's consideration of the Revised Declaration.

TKW'S fifth and final argument on the grant of summary judgment to the defendants on its warranty claims is that the district court abused its discretion by failing to toll the statute of limitations. *See* 2012 WL 2466616, at *11 n.9. As noted, the statute of limitations for a breach of warranty is four years. 13 Pa. Cons. Stat. Ann. § 2725(a). It begins to run when tender of delivery of the allegedly defective product occurs, "regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 2725(b); *see also City of Phila. v. Lead Indus. Ass'n Inc.*, 994 F.2d 112, 121. n.7 (3d Cir. 1993).

7

TKW asserts that there was substantial evidence before the district court of the defendants' knowledge of and misrepresentation of the actual amount of cashmere in the yarns at issue, since at least 2006, and that this mislabeling demonstrates fraudulent concealment that would toll the statute of limitations.

TKW has not provided any case law or statutory provisions to support its claim that the statute of limitations for warranty actions can be tolled by alleged fraudulent concealment. Indeed, the statute itself establishes this is not true. Section 2725(b) provides that "[a] cause of action accrues when the breach occur*, regardless of the aggrieved party's lack of knowledge of the breach*." 13 Pa. Cons. Stat. § 2725(b) (emphasis added). Admittedly, § 2725(d) does state that "[t]his section does not alter the law on tolling of the statute of limitations. . . ." 13 Pa. Cons. Stat. § 2725(d). However, "this section" referred to is captioned "Statute of Limitations in contracts for sale." Thus, § 2725(b) seems to provide an exception to § 2725(d).

For all of the above reasons, we hold that the district court did not err in granting summary judgment to all of the defendants on TKW's warranty claims.

### B. The district court erred in holding that TKW did not have RICO standing.

It is well-settled that the plaintiff cannot prevail under section 1962(c) absent injury in his business or property that is caused by the conduct constituting the RICO violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

The Supreme Court has declared that Congress's limitation of recovery to business or property injury "retains restrictive significance. It would for example exclude personal

8

injuries suffered.'" *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3d Cir. 1991) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). Moreover, injury to "valuable intangible property" is normally not the type of property injury that is capable of incurring a concrete financial loss. *Anderson v. Ayling,* 396 F.3d 265, 271 (3d Cir. 2005). Therefore, to prove standing under 18 U.S.C. § 1964(c), a plaintiff must proffer "proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (citation omitted).

Moreover, "[t]here must be a direct relationship between the injury asserted and the injurious conduct alleged," and only where proximate cause exists does a plaintiff have standing to raise a RICO claim. *Holmes v. SPIC*, 503 U.S. 258, 269 (1992). Thus, a RICO plaintiff who complains of "harm flowing directly from the misfortunes visited upon a third person by the defendant's acts" may not recover under §1964(c). *Id*. at 268-69.

TKW claimed five types of RICO injury as a result of the alleged conspiracy to distribute allegedly mislabeled yarns: (1) attorneys' fees; (2) the cost of investigating the allegations of mislabeling and recalling the yarns TKW believed to be mislabeled; (3) the cost of replacement goods; (4) harm to goodwill and reputation; and (5) the cost of and lost profits from the yarns at issue." 2012 WL 2938992, at *4. The district court comprehensively and exhaustively explained why TKW's enumerated damages either "do not constitute concrete financial loss to business or property or were not proximately

9

caused by the Defendants' predicate acts in furtherance of the scheme."[6] *Id*. at \*5-14. We agree with the district court's reasoning and analysis and we will affirm the court's holding as to standing substantially for the reasons stated in the district court's opinion.[7]

## C. The district court erred in dismissing the RICO conspiracy claims.

TKW contends that the district court erred in dismissing, its conspiracy claims pursuant to 18 U.S.C. § 1962(d) against Debbie Bliss, Diane Elalouf , Jeffery Denecke, Designer Yarns and Filatura pursuant to Fed.R.Civ.P 12(b)(6) and (c).[8]

---

[6] The defendants conceded the fraudulent scheme solely for the purpose of addressing whether TKW would have standing under RICO to seek redress for such a scheme. 2012 WL 2938992, at \*5 n.3.

[7] The district court expressly noted the absence of any argument from TKW on the subject of RICO injury. *Id*. at \* 5 n.3. Given TKW's failure to make any substantive arguments in support of its claimed injuries, we are hard-pressed to understand how TKW can now complain that the district court erred in holding that it did not have RICO standing. Nonetheless, as we stated above, the district court fully and exhaustively explained why TKW did not have RICO standing.

Ironically, the largest injury claimed by TKW are attorneys' fees in the amount of over $2 million billed by James Casale, TKW's principal and its lawyer. The district court did not address the fact that TKW is effectively a *pro se* plaintiff, but it rejected the idea that attorneys' fees were injury sufficient to confer RICO standing. It wrote: "[T]he Court finds that such damages in and of themselves are insufficient to confer RICO standing. Otherwise, [TKW], in the absence of any other injury caused by Defendants' purported conspiracy, could obtain standing simply by initiating a lawsuit. Accordingly, these fees fail to provide the requisite concrete financial loss resulting from the alleged RICO violations from which this Court can find statutory standing." *Id*. at \*5. We agree. In fact TKW's attempt to morph *pro se* attorney's fees into a RICO injury is as novel as it is frivolous.

[8] TKW refers to these defendants as the "Supply Chain Conspirators."

10

18 U.S.C. § 1962(d) makes it unlawful for any person to conspire to violate subsections (a), (b), or (c) of RICO. Because there is no requirement of some overt or specific act, the RICO conspiracy provision is even more comprehensive than the general conspiracy offense. *Salinas v. United States*, 522 U.S. 52, 63 (1997). Thus, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001). Nonetheless, "[u]nderlying a § 1962(d) claim is the requirement that plaintiff must show that defendants agreed to the commission of a 'pattern of racketeering.'" *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990). Those who innocently provide services will not incur § 1962(d) liability; rather, "liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Smith*, 247 F.3d at 538 n.11.

Thus, pleading a § 1962(d) conspiracy requires a plaintiff to "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000). The supporting factual allegations "must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (citation and quotation marks omitted). It is not enough for a complaint to simply make "conclusory allegations of concerted action but [be] devoid of facts actually

11

reflecting joint action."[9] *Abbot v. Latshaw*, 164 F.3d 141, 148 (3d Cir. (1998).

Moreover, "mere inferences from the complaint are inadequate to establish the necessary

factual basis." *Rose*, 871 F.2d at 336. "Plaintiff must allege facts to show that each

Defendant objectively manifested an agreement to participate, directly or indirectly, in

the affairs of a RICO enterprise through the commission of two or more predicate acts."

*Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2008 WL 5129916, at *7 (W.D. Pa. Dec

5, 2008). "Bare allegations of conspiracy described in general terms may be dismissed."

*Id.* As we explain below, the allegations here fail to satisfy this standard as to any of the

defendants.

### (i). Debbie Bliss.

The district court dismissed TKW's complaint against Bliss in its entirety. *The*

*Knit With v. Knitting Fever, Inc.*, 2010 WL 4909929, at 1 (E.D. Pa. Dec. 1, 2010). In

this portion of its appeal, TKW contends that the district court erred in so doing.[10]

---

[9] This analysis need not rise to the level of particularity required by Fed.R.Civ.P. 9(b) for allegations of fraud; rather it is governed by the more liberal pleading standards of Rule 8. *Rose*, 871 F.2d at 366.

[10] Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). This court conducts a *de novo* review of a Rule 12(b)(6) dismissal of a compliant. *See Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To avoid dismissal, a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S.662, (2009); *Bell Atl.*

12

TKW's complaint alleges the existence of a conspiracy between KFI, Sion Elalouf, and Designer Yarns, as follows:

> Upon information and belief – to effect "damage control" and to continue "pulling the wool over" the trade concerning the cashmere content [of the yarns at issue] – Mr. Elalouf and Designer Yarns agreed, after May 26, 2006 and certainly before June 20, to claim that the [yarns at issue], since 2001, *always* contained the requisite quantity of cashmere (or, conversely, to cover-up the absence of any cashmere content in the Debbie Bliss Cashmerino since 2001).

Compl. ¶ 60 (emphasis in original). Debbie Bliss's alleged participation in this conspiracy is described in only three paragraphs of, and one exhibit to, the Complaint. *See* Compl. ¶¶11, 72, 129; Compl. Ex. 16.

Paragraph 11 describes Bliss's background and how she came to design yarns and ultimately license her brand of yarns to defendant Designer Yarns. The paragraph ends with the conclusory allegation that "[a]t all times relevant to this Complaint, and certainly since September 2006, Mrs. Bliss has participated in and facilitated the racketeering

---

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Conclusory allegations of liability do not suffice. *See Iqbal*, 556 U.S. at 679.

A court confronted with a Rule 12(b)(6) motion must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the nonmovant. *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008). Legal conclusions receive no such deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

13

scheme which has injured Plaintiffs' business." However, that is simply a legal conclusion which is entitled to no deference.

Paragraphs 72 and 129, together with Exhibit 16, assert that Bliss evidenced her participation in the conspiracy by authoring an open letter to the yarn retailing community in 2006 addressing the rumors of mislabeling and expressing her "complete confidence in the honesty of all the parties from the mills that acquire and spin the fibers, to the distributors and agents who have all work so hard to make the brand so successful." However, TKW's sixty-page complaint fails to include any specific allegation that Bliss intended to facilitate a conspiracy or operate a RICO enterprise. Accordingly, the district court "declined to make the untenable leap that Defendant Bliss's authoring of a letter – defending a line of yarns to which her name was attached . . . demonstrates . . . her agreeing to participate in a pattern of racketeering activity . . .." 2010 WL 49099289, at *7. Accordingly, the district court did not err in granting Bliss' Rule 12(b)(6) motion and dismissing the complaint against her in its entirety.[11]

_____

[11] By Order, dated April 14, 2011, the district court denied TKW's motion to vacate Bliss's dismissal. TKW contends in its appeal that it presented newly discovered evidence to the district court that Bliss was "quoted as participating in specifying the [cashmere content in the yarns at issue] since inception of the branded product." According to TKW, this newly discovered evidence is precisely the evidentiary fact required to subject Bliss to RICO conspiracy liability.

TKW's characterization of Bliss's statement is inaccurate. The statement doesn't mention the [yarns at issue at all]. Instead, the statement was made during an interview when Bliss, speaking generically and not with reference to any particular yarn, described her approach to creating designs as follows: "I might suggest to them, oh I would like uh perhaps a bit more wool in it, perhaps a bit more silk in it." Bliss was not discussing the content of the yarns at issue here. Indeed, they contain no silk. Thus, this particular argument is meritless.

14

### (ii). Designer Yarns and Filatura.[12]

The district court found, and TKW does not disagree, that TKW's complaint alleges two distinct schemes to defraud: (1) a conspiracy between the KFI defendants and Designer yarns to distribute the mislabeled yarns at issue and (2) a conspiracy between the KFI defendants and the remaining defendants to cover-up the initial fraudulent plans. 2011 WL 891871, at *8. This is significant because the cover-up conspiracy is not alleged to have occurred until 2006, Compl. ¶¶ 60, 61. However, TKW admits that its last purchase of the yarns at issue occurred, at the latest, in the fall of 2005. Compl. ¶ 41. Thus, because the second conspiracy began after TKW bought the yarns at issue, it could not have caused TKW's alleged injury, viz., the purchase of mislabeled yarns. Accordingly, the district court did not err in dismissing the RICO conspiracy claim against Filatura. Indeed, we note that TKW expressly admits that its business and commercial interests were harmed, not as result of the cover-up, but rather "[a]s a consequence of the false labeling of [the yarns at issue here]." Compl. ¶ 82.

Apparently realizing the effect of having pled two separate conspiracies, as opposed to one continuous one, TKW now tries to avoid the results of its own allegations. TKW first contends that the district court's reliance on *Pyramid Securities, Ltd. v. IB Resolution*, 924 F.2d 1114 (D.C. Cir. 1991), is misplaced because *Pyramid* was a summary judgment case involving an evidentiary standard. However, the district court

---

[12] Throughout its brief, KFI refers to Filatura as "VVG."

did not hold that TKW failed to *prove* necessary facts; it held that TKW failed to *allege* them. 2011 WL 891871, at \*11.

Second, TKW contends that the district court erred in concluding that the second conspiracy is "unrelated" to the first. TKW is correct that a scheme to cover-up a conspiracy has some connection to the original conspiracy. However, TKW cites to no authority for the proposition that this connection alone sufficient to make two conspiracies part of the same pattern of racketeering. In fact, we have held that "allegations of concealment on the part of the RICO defendant do not constitute a basis for establishing an open-ended scheme or threat of repetition to satisfy the continuity requirement." *Davis v. Grusemeyer*, 996 F.2d 617, 623 (3d Cir. 1993) (citation and internal quotation marks omitted).

Third, and finally, TKW contends that the alleged cover-up conspiracy was also a conspiracy to allow the continued sale of mislabeled yarn. However, in support of this contention, TKW cites to "facts" that it did not allege in its complaint. *See* TKW's Br. at 41-42. When assessing a motion to dismiss or motion for judgment on the pleadings, however, a court may only consider the "allegations contained in the compliant, exhibits attached to the compliant, and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

With regard to Designer Yarns, TKW contends that the factual allegations at ¶¶ 5, 11 and 36 "give the grounds" for Designer Yarns "mislabeling conspiracy liability." TKW's Br. at 44. Paragraph 5 alleges only that Designer Yarns has a license to use the Debbie Bliss trademark and a distributor relationship agreement with KFI. Paragraph 11

provides only background information regarding Bliss and alleges that she licensed her name to Designer Yarns. TKW provides no legal authority for claiming that merely holding a trademark license and entering into a distribution agreement permits the inference of an agreement to conspire.

Paragraph 36 does allege that "certainly before June 9, 2011 and on a date more specifically known only to Defendants, Mr. Elalouf and Designer Yarns entered into an agreement to substitute the 0% cashmere version for the Cashmerino spun of 12% cashmere." However, aside from this legal conclusion, the compliant identifies no factual bases upon which a court could make the reasonable inference that Elalouf and Designer Yarns affirmatively and knowingly entered into some sort of plan or scheme to commit the requisite predicate offenses.

TKW asserts that "Designer need not agree to or participate in Elalouf's corrupt acts." TKW's Br. at 44. According to TKW, "controlling authority requires only Designer be aware of the enterprises' activities." *Id*. at 44-45 (citing *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001). However, nothing in the cited authority abrogates the well-established principle that liability under § 1962(d) is available only for services "which were purposely and knowingly directed at facilitating a criminal pattern of racketeering activity." *Smith*, 247 at 537 n.11. While an alleged conspirator need not agree or participate in each of the predicate acts, it must conspire "to violate RICO – that is, to conduct or participate in the activities of a corrupt enterprise." *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 539 (3d Cir. 2012) (citing *Salinas v. United States*, 552 U.S. 52, 62 (1997). We agree with KFI that TKW's allegations that Designer Yarns held a

17

trademark license, entered into distribution agreements to sell products using that trademark, and a boilerplate allegation of an agreement to conspire do not permit the inference that Designer Yarns agreed to conduct or participate in the activities of a racketeering enterprise.

Finally, we reject TKW's contention that Designer Yarns was part of the cover-up conspiracy. TKW asserts that "[n]o controlling precedent requires Designer to know who orchestrated the cover-up." TKW's Br. at 46. TKW's factual allegations consist only of a conclusory allegation of Designer Yarns' participation in a cover-up (Compl. ¶ 60) and allegations regarding: obtaining yarn samples for testing (Compl. ¶¶ 62-63); and transmitting the results to its sub-licensee and distributor (Compl. ¶ 65). As correctly noted by the district court, "such allegations fail to imply Designer Yarns's knowledge that his analysis was part of any alleged cover-up orchestrated by Elalouf – especially since the testing showed cashmere in the yarns. . . ." 2011 WL 891871, at *10.

### (iii). Diane Elalouf and Jeffrey Denecke.

TKW submits that its complaint contains two factual allegations against Elalouf that are sufficient to state a claim under § 1962(d) for her participation in the original, mislabeling conspiracy, viz., Compl. ¶¶ 8 and 35. TKW contends that Paragraph 8 alleges that she was an officer and shareholder of KFI and it contends that Paragraph 35 alleges that she was the "sole KFI employee with access to suppliers' invoices specifying product fiber content at variance from the products' labeled compositions." In TKW's view, these two allegations sufficiently suggest that Diane Elalouf knew of, agreed to, and facilitated the mislabeling conspiracy.

18

In support of its submission, TKW cites to two cases. However, neither is helpful. In *United States v. Ali*, 2005 WL 2989728 (E.D. Pa. Aug. 19, 2005), the government pled that the defendant personally committed predicate acts and participated in the association-in-fact enterprise. *Id*. at \*2. Here, TKW pled nothing in this regard with respect to Diane Elalouf. *Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999) is no stronger. It does not involve a RICO conspiracy and it does not support the assertion that merely benefitting from the alleged RICO enterprises' activity is sufficient to state a claim under § 1962(d).

TKW's argues that it did allege that Diane Elalouf was the "sole KFI employee with access to suppliers' invoices specifying product fiber content at variance from the products' labeled compositions." However, TKW mischaracterizes its own complaint. Paragraph 35 simply does not allege that the supplier invoices to which she allegedly had sole access "specif[ied] product fiber content at variance from the products' labeled composition." Rather, Paragraph 35 alleges only that Diane Elalouf had sole access to the manufacturers' stated content of the yarns at issue and "could prevent" KFI employees from "learning the invoiced purchase values," the "true source of products" and "learning, as disclosed by the manufacturer, the actual fiber content of goods imported and resold by KFI." Compl. ¶ 35. Nowhere does the compliant allege that these invoices would reveal a variance with the labeled content. As the district court observed: "Noticeably missing from the allegations is any indication that Diane Elalouf had any actual knowledge of the alleged corrupt enterprise's activities." 2011 WL 1161716, at \*7.

19

Finally, we note that, with respect to Diane Elalouf and Jeffrey Denecke, TKW does not contest the district court's conclusion that TKW did not suffer any injuries by reason of the alleged cover-up conspiracy.[13]

Accordingly, for all of the above reasons, we hold that the district court did not err in dismissing the RICO conspiracy charges against Diane Elalouf and Jeffrey Denecke.

### D.  The district court erred in dismissing the Lanham Act false advertising claims.

In *The Knit With v. Knitting Fever, Inc.*, 2008 WL 5381349 (*"Knit With I"*) (E.D. Pa. Dec. 18, 2008) and *The Knit With v. Eisaku Noro and Co., Ltd.*, 2008 WL 5273582 (*"Knit With II"*) (E.D. Pa. Dec. 19, 2008), the district court granted the defendants' Rule 12(b)(6) motions to dismiss the Lanham Act false advertising claims on standing grounds.  The district court analyzed whether TKW had standing pursuant to the factors set forth in *Conte Bros. Auto. Inc. v. Quaker-State Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998).  *Knit With I*, 2008 WL 5381349 at *12-17.  The district court concluded that all but one of the *Conte* factors "counsel[] this Court to dismiss Plaintiff's Lanham Act claim" and as a result, it found that TKW "lacks prudential standing to maintain a cause of action . .. under § 43(a) of the Lanham Act" against the defendants named in *Knit With I*.  *Id*. at *17.

Section 1125(a)of Title 15 of the United States Code creates two distinct bases of liability: false association, § 1125(1)(A), and false advertising, § 1125(1)(B).  *See Waits*

---

[13] TKW does argue that Denecke's dismissal must be vacated because the original conspiracy and the cover-up conspiracy are related.  However, as discussed above, the two conspiracies are not one continuous conspiracy.

20

*v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992). In *Conte Bros.*, we created a test for deciding whether a plaintiff has prudential standing to bring a Lanham Act false advertising claim. *See Conte Bros.*, 165 F.3d at 231-35.

However, in *Lexmark International, Inc. v. Static Control Components, Inc.,* ___ U. S. ___, 134 S. Ct. 1377, the Court established a new analytical framework for determining a party's standing to bring Lanham Act false advertising claim, which abrogated our *Conte* five-factor test. In *Lexmark,* the Court held that "a direct application of the zone-of-interests test and the proximate cause requirement supplies the relevant limits on who may sue." *Id*. at 1391. The Court held:

> to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act – a conclusion reached by every Circuit to consider the question. ***Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.***

*Id*. at 1390 (citations omitted) (emphasis added). In view of the final sentence of the above-quoted paragraph, it seems apparent that TKW, a yarn retailer who alleges to have been misled by its supplier into purchasing mislabeled yarn, is not within the zone of interests protected by the Lanham Act. Thus, TKW lacks standing to bring a Lanham Act false advertising claim.[14]

---

[14] TKW contends that the Court's decision in *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014) applies here. However, *Pom Wonderful* has no application here. The district court did not dismiss TKW's Lanham Act claims as precluded by the Wool

**E. The district court erred by misapplying the "gist-of-the-action" doctrine and dismissing the deceit action.**

KFI, Diane and Sion Elalouf filed motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) contending that TKW's deceit claim was actually a tort claim and was barred by the gist of the action doctrine and/or the economic loss doctrine. The district court granted the motions and dismissed the deceit action under both doctrines. *The Knit With v. Knitting Fever, Inc.*, 2009 WL 3427054, at *8-16 (E.D. Pa. Oct. 20, 2009).

As a general rule, Pennsylvania courts are cautious about permitting tort recovery on contractual breaches. *Glazer v. Chandler*, 200 A.2d 416, 418 (Pa. 1964). "A claim should be limited to a contract claim when the 'parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992). Whether the gist-of-the-action-doctrine applies in any particular setting is a question of law. *Id*.

After an exhaustive analysis, the district court concluded that "the true nature of the dispute between the parties arises out of their contract for the sale of handknitting yarns that should, but purportedly did not, contain a certain percentage of cashmere. As such, . . . the gist of the action doctrine . . . cabin[s] [TKW's] permissible claims to those sounding in contract." 2009 WL 3427054, at *18. Accordingly, the district court dismissed the deceit claim asserted against KFI, Diane Elalouf and Sion Elalouf.

---

Products Labeling Act. Rather, as explained above, the Lanham Act claims were dismissed due to TKW's lack of standing.

22

TKW challenges only the district court's conclusion that the gist-of-the-action doctrine barred the deceit claim.

TKW's first argument is that the district court erred by applying the gist-of-the-action doctrine to "strangers, like the Elaloufs, to the TKW-KFI contract." TKW's Br. at 62. If TKW had not alleged that KFI was the alter ego of the Elaloufs, there would be no basis for asserting a claim against them personally for an alleged misrepresentation made by the corporate entity. 2009 WL 3427054, at *17. However, because TKW claimed that the Elaloufs were the alter egos of KFI, the district court held that TKW could not claim that the Elaloufs were strangers to the KFI contract. Accordingly, the district court held that the gist-of-the-action doctrine applied to bar TKW's claims against the Elaloufs. *Id.* (citing *Mikola v. Penn Lyon Homes, Inc.*, 2008 WL 2357688, at *7 (M.D. Pa. June 4, 2008). Significantly, TKW provides no authority to the contrary, and we have found none.

TKW's second argument is that the district court erred by applying the gist-of-the-action doctrine to KFI. TKW contends that the Wool Products Labeling Act (WPLA), specifically 15 U.S.C. § 68(c), imposes a "duty to label [that is] independent of any obligation KFI assumed in its contractual relationship with TKW." TKW's Br. at 63. However, as the district court recognized: "There is no private right of action to enforce these provisions [of the WPLA] and thus cannot be an independent source of duties that would grant [TKW] standing to pursue its tort claims absent a contract creating privity between the two parties." 2009 WL 3427054, at *15, n.15.

23

TKW contends that this court's recent decision in *Delaware & Hudson Rwy. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656 (3d Cir. 2015), applies to its appeal. We disagree. *Knoedler* was concerned with whether state law claims based on a federal standard of care are preempted by the provisions of a federal statute. However, preemption was never an issue in this case and KFI never even asserted a preemption argument with regard to TKW's deceit action.

TKW next contends that the district court "erred again by assuming the KFI-TKW contract expressly incorporates representations concerning the products' fiber content." TKW's Br. at 64. However, the district court did not assume that the contract terms specified fiber content. Rather, TKW pled that "[a]t the time of contract, Plaintiff purchased and sought delivery of handknitting yarns spun with 12% cashmere – products which Plaintiff did not receive from Defendants." Compl. ¶ 88. In addition, contrary to TKW's suggestion, the district court did not assume that KFI fulfilled those contractual duties but rather held only that "any failure of the yarns to contain the represented amount of cashmere violated the clear terms of the contract and constituted a breach of express warranty." 2009 WL 3427054, at *14.

Finally, TKW argues that the district court erred in dismissing its deceit claim because the common law of unfair competition provides an action for practices determined by law to be an unfair method of competition. TKW's Br. at 62-64 (citing Restatement (Third) of Unfair Competition § 1). However, as the district court correctly noted: "Nothing in this section grants standing to a merchant retailer simply due to the

24

supplier's failure to sell the goods promised in a contract." 2009 WL 3427045, at *15, n.14.

## F. The district court abused its discretion in supervising discovery.

Finally, TKW challenges the district court's rulings: (1) allowing the entry of a confidentiality agreement requested by FKI; (2) appointing a discovery master; (3) denying motions to compel; and (4) adhering to the Federal Rules' timing for expert disclosures. "We review a district court's discovery orders for abuse of discretion, and will not disturb such an order absent a showing of actual and substantial prejudice." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010).

Even if it is assumed for argument's sake that the district court's discovery rulings constituted an abuse of discretion, TKW, aside from simply claiming prejudice, has not come close to making the required showing that it suffered "actual and substantial prejudice" as a result of the district court's holdings. Thus, we also reject this argument.

## III.  CONCLUSION

For all of the above reasons, we will affirm the district court.[15]

---

[15] As we noted at the outset, and as we detailed in note 1, *supra*, this dispute has had a tortured and protracted history. We hope that the resolution of this appeal will now bring some resolution to it.